# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 23, 2002 Session

## STATE OF TENNESSEE v. RICHARD DEWAYNE JORDAN

### Direct Appeal from the Circuit Court for Rhea County
### No. 15533    Buddy D. Perry, Judge

### No. E2001-01947-CCA-R3-CD
### April 2, 2003

A Rhea County grand jury indicted the defendant on multiple sexual offense charges.[1]  At the conclusion of a trial, the defendant was acquitted of numerous offenses but found guilty of two counts of aggravated sexual battery (as lesser included offenses of aggravated rape).  For each of these convictions, the trial court sentenced the defendant to twelve years as a standard offender.  The court then set these sentences to run concurrently.  After unsuccessfully pursuing a new trial motion, the defendant brings this appeal, raising five issues.  He avers 1) that the evidence was insufficient to support the verdict; 2) that the prosecutor committed reversible error by soliciting "unrelated crimes" evidence from a State witness; 3) that the prosecution committed reversible error by comments made in its closing argument; 4) that the trial court erred in failing to declare a not guilty verdict as to all counts after the jury indicated that this was its verdict; and 5) that the trial court erred in excessively sentencing the defendant. After reviewing the record and relevant authorities, we find it necessary to remand the defendant's aggravated sexual battery conviction under trial count two for resentencing consistent with this opinion. However, we find that none of the other issues merit reversal and, therefore, affirm the defendant's convictions and his aggravated sexual battery sentence under count four of the indictment.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Larry G. Roddy, Sale Creek, Tennessee, for the appellant, Richard Dewayne Jordan.

---

[1] The fourteen-count indictment charged the defendant with eight offenses involving the victim in this case and with six offenses involving one of this victim's sisters. In response to the defendant's motion, the trial court severed these sets of cases. When the offenses involving this victim proceeded to trial, only six of the eight counts remained, and the trial court renumbered these for the jury's sake because of the severance.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Will Dunn, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

**Factual Background**

While more detail specifically applicable to the issues raised will be provided later, this case essentially involves allegations of multiple events of molestation occurring from approximately 1986 to 1991. During the vast majority of this time frame, the defendant's family lived in a trailer on land that they shared in part with Earl Jordan, one of the defendant's brothers. G. J.,[2] the victim in this case, is a daughter of this brother. The record reflects that she was born on October 4, 1982. At trial G. J. provided details concerning four separate incidents of sexual abuse. However, as aforementioned, the jury only found the defendant guilty of two counts of aggravated sexual battery.

With respect to the first of these convictions, the victim testified that her parents had gone to the hospital in 1989 for her little brother's birth. The defendant and his wife, the victim's aunt, were babysitting at the victim's family home. According to G. J. the defendant entered the bedroom where she and two of her sisters were sleeping, placed his hands beneath the covers and her nightgown, and digitally penetrated her. The victim's sister Lisa indicated that the defendant had entered the room that night and sat on the edge of the bed in which she and the victim were sleeping. Lisa further stated that she had felt the defendant's hand brush against her thighs as he reached toward the victim's vaginal area. This witness added that she had then felt the defendant's hand moving back and forth.

Regarding the facts surrounding the second aggravated sexual battery conviction, the victim recounted that sometime around the fall of 1990 the defendant and her aunt were again babysitting her and her siblings. At the request of the oldest sister Susan, all five girls were sleeping in the same bedroom. The victim related that the defendant had entered the room, untucked the covers, reached under her nightgown, and again digitally penetrated her. G. J. indicated that to get to her, the defendant had reached across Susan, who was lying in the same bed. Also called by the State to testify, Susan corroborated numerous details from this account. Following this witness, the State rested.

In presenting its case, the defense called three individuals. The first was a relative who stated that the victim had hugged the defendant and told him that she loved him at the victim's grandfather's funeral approximately a year and a half before the trial. The next witness was Brenda Jordan, the defendant's mother and victim's grandmother, who affirmed that she also had seen no animosity between the two. Finally, Marty Jordan, another of the defendant's brothers and the victim's uncle, attempted to provide the defendant with an alibi for the offense allegedly occurring around the aforementioned nephew's birth. According to this witness the defendant was in South Carolina with the witness at that time seeking work available because of hurricane damage.

---

[2] It is the policy of this court to use initials in referring to child sexual abuse victims.

Upon hearing this and additional proof, the jury convicted the defendant as previously outlined. In this appeal the defendant challenges both his conviction, and sentences through five issues.

## Sufficiency

We first address the defendant's allegation that the proof is insufficient to support his convictions. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. While the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded," case law provides that "a criminal offense may be established exclusively by circumstantial evidence." State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also, e.g., State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987).

Turning to the language of the aggravated sexual battery statute in force at the time of the first offense,[3] Tennessee Code Annotated section 39-2-606(a) stated that "[a]ggravated sexual battery is unlawful sexual contact with a victim by a defendant or unlawful sexual contact with a defendant by a victim accompanied by any of the circumstances listed in § 39-2-603(a)." Tenn. Code Ann. § 39-2-606(a) (Supp. 1988). This list of circumstances included that "[t]he victim is less than thirteen (13) years of age." Id. § 39-2-603(a)(4) (Supp. 1988). Additionally, the code defined sexual contact as "includ[ing] the intentional touching of the victim's or defendant's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or defendant's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." Id. § 39-2-602(10) (Supp. 1988). This same section defined

---

[3] The dates provided as the possible range of time during which this offense occurred are "between September 1, 1989 and October 31, 1989." We note that November 1, 1989, served as the effective date for changes in the statutes regarding sexual offenses. See Tenn. Code Ann. §§ 39-13–501 to -515 (Supp. 1989).

"intimate parts" as "includ[ing] the primary genital area, groin, inner thigh, buttock or breast of a human being." Id. § 39-2-602(5) (Supp. 1988).

With this background we return to the facts relating to the first of the aggravated sexual battery convictions. Both the victim and her father identified her date of birth as being October 4, 1982. Thus, around the time of her little brother's birth in 1989, G. J. would have been well under thirteen years of age. Furthermore, she stated that the defendant had entered the room in which she and her sisters Lisa and A. J.[4] had been sleeping. G. J. indicated that she and Lisa were sleeping in the same bed at that time. The victim then related that the defendant had reached under the covers and her nightgown to digitally penetrate her (the victim's) vagina. As above-noted, Lisa confirmed that the sleeping arrangements at the time had been as the victim had related and that the defendant had entered her (Lisa's) and two of her sisters' room after they had gone to bed. Lisa added that the defendant had reached across her toward the victim at the level of the victim's vagina and had then moved his hand in a forward and backward motion. This proof definitely satisfies beyond a reasonable doubt each of the aforementioned necessary elements. As such, this portion of the defendant's sufficiency issue lacks merit.

The offense supporting the second aggravated sexual battery conviction allegedly occurred around the fall of 1990. Therefore, the statutes outlined above had been repealed and replaced by those found in title 39, chapter 13, part 5 of the code; however, the substance thereof remained essentially the same. For example, Tennessee Code Annotated section 39-13-504(a) defines aggravated sexual battery as "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the circumstances listed in § 39-13-502(a)." Id. § 39-13-504(a) (Supp. 1990). Section 39-13-502(a)(4) directly tracks the language of the repealed statute by providing as one of these circumstances that "[t]he victim is less than thirteen (13) years of age." Id. § 39-13-502(a)(4) (Supp. 1990). Furthermore, the definition of "sexual contact" became slightly more expansive as it "include[d] the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Id. § 39-13-501(6) (Supp. 1990) (emphasis added). Finally, we note that the code's definition of "intimate parts" remained exactly the same. Id. § 39-13-501(2) (Supp. 1990).

Employing these criteria, we begin our review of the evidence set out in the trial regarding this offense. The record reflects that the defendant and his wife were once more babysitting the children in the victim's family around the fall of 1990. At this time the victim would have still been well under thirteen years old. According to her testimony concerning that night, all five sisters were sleeping in one bedroom at Susan's request, and Susan had told the victim to wake her should anyone come into the room. On this occasion Susan and the victim shared the top bunk and had tightly tucked the covers around them. G. J. testified that the defendant had entered the bedroom; untucked the covers; reached across Susan toward the victim, who was sleeping against the wall; and digitally penetrated her, moving his fingers in and out of her vagina. The victim recounted that she

---

[4] A. J. is the alleged victim in the previously referenced set of severed cases.

had tried to awaken Susan by kicking her and that the defendant had left when Susan began making noise as if awakening.

During her testimony Susan corroborated multiple aspects of the victim's account. Susan affirmed that she had requested the sleeping arrangements, told the victim to wake her if someone entered the bedroom, and tightly tucked the covers around the victim and herself. She further stated that she had been drifting off to sleep when she became aware that the defendant had entered the room. According to this witness she felt the defendant's hand move across her upper thighs as he reached toward G. J. and then felt it moving up and down. Susan added that she and her sister were lying so that their "private area[s were] lined up and [the defendant] had his hand between [the victim's] legs." Finally, Susan confirmed that G. J. had begun kicking her and that the defendant had left when she (Susan) began acting as if she were awakening.

Once more viewing the evidence in the light most favorable to the State, we find sufficient proof to support beyond a reasonable doubt each of the elements of aggravated sexual battery. This claim, therefore, also lacks merit.[5]

## **"Unrelated Crimes" Evidence**

Through this appeal the defendant further asserts that the prosecution committed reversible error by soliciting from one of the State's witnesses testimony of other crimes. More specifically, the defendant avers that the prosecutor asked the victim's sister Lisa questions concerning the defendant's behavior toward A. J. on a particular occasion.

When dealing with the propriety of evidence, the proposed proof must satisfy the threshold determination of relevancy mandated by Tennessee Rule of Evidence 401. This rule defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 403 adds that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. And finally, Rule 404 deals with alleged "character evidence." Subsection (b) of this rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). However, the same subsection further sets out that such evidence may

---

[5] In his argument of this issue, the defendant essentially concedes that sufficient evidence exists to support the greater offense of aggravated rape if the State's witnesses are to be believed. He, therefore, avers that the jurors faced an "all or nothing" situation and that their aggravated sexual battery convictions should be invalidated as a compromise verdict under this set of facts. However, he cites no direct controlling authority for this proposition. Furthermore, we believe that his position conflicts with Tennessee case law governing the charging of lesser included offenses. See, e.g., State v. Richmond, 90 S.W.3d 648, 660 (Tenn. 2002); State v. Eddie Lee Taylor, No. W2001-01077-CCA-R3-CD, 2002 WL 1732340, at *3-*4 (Tenn. Crim. App. at Jackson, Apr. 4, 2002).

be allowed "for other purposes" if the following conditions are met prior to admission of this type of proof:

> (1) The court upon request must hold a hearing outside the jury's presence; (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). Providing further clarification concerning the second requirement, both the Advisory Commission Comment to this rule and case law state that the above-mentioned "other purposes" include issues such as motive, intent, absence of mistake, etc. See, e.g., id. (Advisory Commission Comment); State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985); Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980); State v. Jones, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999).

In the case presently before this Court, as has previously been discussed, the State called the victim's sister Lisa to testify. While doing so, the following exchange took place:

[Prosecutor:] Okay. What happened to [the victim] when [the offense] happened? How long did [the defendant] continue this? Take your breath[. J]ust breathe.

[Lisa:] . . . Can you repeat the question[?]

[Prosecutor:] How long was he in there touching [the victim]?

[Lisa:] I can't remember exactly how long.

[Prosecutor:] Okay. Did you do anything?

[Lisa:] I was just frozen.

[Prosecutor:] Did he leave finally?

[Lisa:] I don't remember. I dozed off.

[Prosecutor:] Can you get us a cup of water, please?

[Lisa:] I can remember just waking back up and he's in there at the foot of the bed.

[Prosecutor:] Again or . . .

[Lisa:] Yes.

[Prosecutor:] What did you see him do then, please.

[Lisa:] He was setting [sic] on the foot of the bed and there was another bed at the end across from my sisters and I saw him . . . .

[Prosecutor:] Just take a drink of water and catch your breath[. T]ake a drink of water.

| | |
|---|---|
| [Lisa:] | I saw him down there and he was setting [sic] on the foot of my bed and other [sic] sister[']s[] bed was like at that end and I just saw him down there leaned over. |
| [Prosecutor:] | Leaned over who [sic]? |
| [Lisa:] | My other sister[']s[] bed. |
| [Prosecutor:] | Who was in that bed? |
| [Lisa:] | Who was in the bed, [A. J.]. |
| [Prosecutor:] | How long did he stay there? |
| [Lisa:] | Just a few minutes. |
| [Prosecutor:] | I know you didn't have a watch on. |
| [Defense counsel:] | Judge, may we approach a moment and it will give her a break anyway. . . . I've lost track[. W]hat are we talking about? |
| [Prosecutor:] | What happened that night. |
| [Defense counsel:] | Why you can't do that? He's getting into the [A. J.] incident. |
| [Prosecutor:] | No, I'm not[. T]hat's all I'm asking. |
| [Defense counsel:] | She said he's over at [A. J.'s] bed now, so he's getting close. It's an unrelated incident. |
| [Prosecutor:] | Well, not really. |
| [Trial court:] | Well, if cross [sic] over into that you're going to get a mistrial, so go at your own pace. |
| [Prosecutor:] | I am[. T]hat's all I'm going to ask. |

From our review of this colloquy, it appears that there may have been confusion concerning which sister the defendant was leaning over until Lisa specifically stated that she was referring to A. J.[6] However, with this clarification the State's follow-up question regarding how long the defendant had lingered over A. J. seems of the type that Rule 404 is designed to prevent because of the character/propensity inference arguably intended by the State.[7] See Tenn. R. Evid. 404(b).

Nevertheless, the defendant's request to approach the bench halted this inquiry in its incipient stage. As is reflected from the above courtroom exchange, the defense itself retreated from its initial allegation that the prosecution was "getting into the [A. J.] incident" to claiming instead that the prosecution was "getting close" to doing so. Further review of the record reflects that the State,

---

[6] Even defense counsel momentarily indicated that he had "lost track[. W]hat are we talking about?"

[7] The prosecutor was aware that the cases involving this victim had been severed from those of G. J.'s and doubtless knew that he was not to delve into A. J.'s alleged molestation.

indeed, asked no further questions involving the defendant's actions toward A. J., and no specific testimony regarding an alleged sexual molestation of A. J. by the defendant ever came before the jury.

With this in mind we note the instruction of Tennessee Rule of Criminal Procedure 52(a) that "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the results of the trial on the merits." Tenn. R. Crim. P. 52(a). Additionally, Tennessee Rule of Appellate Procedure 36(b) states that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Our supreme court has given further guidance in these matters by stating that "the line between harmless and prejudicial error is in direct proportion to the degree . . . by which the proof exceeds the standard required to convict." Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979); see also, e.g., State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999). In the case presently before this Court, the convictions returned by the jury involved alleged instances in which the victim's accounts were completely corroborated by a sister who had shared a bed with her on the separate occasions. Thus, applying these standards to the facts before us, we conclude that even if the prosecution erred in asking the last of this series of questions, this act and the resulting response that the defendant had leaned over A. J. for "[j]ust a few minutes" does not merit reversal of the defendant's convictions. See State v. Bobby B. Barrett, No. W1999-02002-CCA-R3-CD, 2000 WL 1840073, at *5 (Tenn. Crim. App. at Jackson, Dec. 12, 2000).

**Improper Closing Argument**

Additionally, the defendant contends that the prosecution committed reversible error by making certain comments during closing argument. Within this issue the defendant challenges statements that the prosecutor made allegedly regarding the possibility of the defendant's receiving probation and statements referencing objections made by the defense during the course of the trial.

In general, the scope of closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1994). However, "argument must be temperate, . . . predicated on evidence introduced during the trial," and relevant to the issues being tried. State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994). Thus, the State must not engage in argument designed to inflame the jurors and should restrict its comments to matters properly in evidence at trial. State v. Hall, 976 S.W.2d 121, 158 (Tenn. 1998).

When a reviewing court finds improper argument, State v. Philpott, 882 S.W.2d 394 (Tenn. Crim. App. 1994), sets out five factors to determine "whether a prosecutor's improper conduct could have affected the verdict to the prejudice of the defendant." Id. at 408. The factors are:

> 1. the conduct complained of in light of the facts and circumstances of the case; 2. the curative measures undertaken; 3. the intent of the prosecutor in making the improper remarks; 4. the cumulative effect of the improper conduct and any other errors in the record; [and,] 5. the relative strength or weakness of the case.

Id. (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

With these guidelines in mind we turn to the defendant's first allegation. As above-referenced, the defendant complains that the prosecutor committed reversible error by arguing that the defendant could be placed on probation if convicted. According to the record the defense stated as follows during its closing argument: "[I]t certainly would be ashamed [sic] to put a man in the penitentiary when there's such a lack of proof in a case. If you do put him in there it's simply because they said he did it." The prosecution later argued:

> He's [defense counsel's] got up here and said you're going to send him [the defendant] to jail. You've heard the proof and you're going to send him to jail. He's [defense counsel's] put a guilt trip on you[. Y]ou're going to send him to jail. Well, you don't send him to jail. His Honor is going to tell you that we have to – he [the trial judge] sends him to jail after another argument on another day, if in fact, you find him guilty I have to sit up here and argue for him to go to jail.

At this point defense counsel asked to approach and stated, "I glean from the argument that the jury is considering whether or not he's giving [sic] probation and I don't think that's proper." The trial court subsequently informed the prosecutor that he had "already introduced argument that's probably got a mistrial." However, though the defense then requested a mistrial, the trial court refused to grant one, stating that the court was "going to try to cure it." The transcript provides no indication of a curative instruction addressing this concern. Nevertheless, while directly afforded the opportunity shortly thereafter to request an additional instruction at the close of the jury charge, the defense did not do so. Indeed, almost in the same breath in which the defense indicated that it wished no additional instruction, defense counsel stated his desire "to make a motion after the jury goes out." When the jury had retired to deliberate, counsel then renewed his motion for a mistrial based upon the inference concerning probation.

Under these circumstances we find that the defendant is not entitled to relief even if the comments constituted error. While the defendant objected after the comments were made, he asked for no curative instruction when given the opportunity to do so. Under Tennessee Rule of Criminal Procedure 36(a), this Court is not required to grant relief to a party when he or she "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P 36(a). We note that jurors are presumed to follow the instructions given them absent evidence to the contrary. See State v. Vanzant, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983). The second of the factors from Philpott speaks to curative measures recognizing their efficacy. Philpott, 882 S.W.2d at 408. Moreover, the case against the defendant for aggravated rape was compelling, nevertheless the jury returned a verdict of guilt on lesser included offenses. Under these circumstances it does not appear to this court that this comment affected the outcome of the trial to the defendant's detriment.

We next address the allegedly erroneous comments made by the prosecutor concerning defense objections. In reviewing the transcript once more, we find that the following exchange took place:

[Prosecutor:] We don't have – well psychological injuries. We don't have a psychologist here. And you can look, she did well in school. There's nothing wrong with her and ladies and gentlemen, she's almost a normal person according to [defense counsel]. Well, you know, what's good for the goose is good for the gander. [Defense counsel] wouldn't let you hear what has happened to her.

[Defense Counsel:] Objection.

[Trial Court:] Sustain.

[Prosecutor:] You remember that[. Y]ou remember his objections.

[Defense Counsel:] Objection.

[Trial Court:] I sustain. Ladies and gentlemen, I'm the one that decides what evidence comes in and doesn't come in. If an attorney makes an objection and it's sustained, it's because there's a rule of evidence that prevents it from coming in and it is improper argument to argue that an attorney has objected and therefore you should rely on that. I'm instructing you, you cannot rely on that.

[Prosecutor:] But may I ask this question, when he objects to it and uses it as a point of argument . . .

[Trial Court:] If I sustain the objection and the testimony did not come in, it's not his fault[. I]t's my fault or hopefully I'm applying the law properly.

[Prosecutor:] I'll withdraw that.


Though neither party should argue that there exists "hidden evidence" excluded by the trial court after an objection, defense counsel's argument also was replete with improper comments. For example, defense counsel argued on two or three occasions that there was no explanation offered why Susan would have tightened the covers and been afraid of the defendant prior to the incident about which she testified. However, the trial court might well have held that the prosecution violated Tennessee Rule of Evidence 404(b) regarding the exclusion of prior bad acts had the State solicited proof that Susan had taken this action and felt this way because the defendant had previously molested her multiple times. See, e.g., McCary, 922 S.W.2d 511, 514-15. Defense counsel also argued that

[i]t would be nice to have some doctor's testimony. If a little girl is molested like this would there not be some psychological scars more significant than what we've heard. She makes good grades. She's an extra-curricular student. She's no psychologist and medical testimony [sic] I have a question and I don't know the answer . . . . If you convict [the defendant,] that's fine, but without any medical proof, without any psychologist's proof, without any tests, without anything at all, other that a 14[-]year[-]old late complaint, which we cannot defend, because we don't even have the correct dates, that's what you'll convict him on. (Emphasis added).

-10-

Again, the prosecution is not permitted under our law to present to a jury expert proof of the symptoms of child sexual abuse in order to prove that such abuse occurred. See, e. g., State v. Ballard, 855 S.W.2d 557, 561-63 (Tenn. 1993); State v. David Calloway, No. 03C01-9808-CR-00324, 1999 WL 1059712, at *3-*4 (Tenn. Crim. App. at Knoxville, Nov. 23, 1999).

In sum, neither the prosecution nor the defense should have been engaged in making these arguments regarding the absence of psychological proof and evidence excluded by the trial court. However, the record reveals that the trial court gave the jury a curative instruction immediately following these comments by the prosecutor. As above noted, jurors are presumed to follow such instructions absent evidence proving otherwise. See Vanzant, 659 S.W.2d at 819. Moreover, it appears that the prosecutor's improper comments were a response to the defense's contention that no expert proof of psychological injuries existed as opposed to the reality that such proof had been excluded by the trial court. Again, utilizing the Philpott criteria, we remain unconvinced that this complained of behavior on the part of the prosecutor impacted the jury's verdict. This portion of the defendant's claim, thus, also merits no relief.


## Return of Verdict


The defendant further contends that the trial court erred by not declaring a verdict of not guilty after the jury initially reported such. However, we note that the defendant has combined this issue with his sufficiency claim and that the only authority cited deals with the sufficiency allegation. We, therefore, find that this issue is waived because it is not supported by "citation to authorities" as is required by the rules of this Court. See Tenn. Ct. Crim. App. R. 10(b). Additionally, we find that even if this issue were not waived, it lacks merit.

In State v. Smith, 836 S.W.2d 137 (Tenn. Crim. App. 1992), this Court highlighted that

[s]ince the reception of a verdict is not solely a ministerial as distinct from a judicial act, when the jury return[s] . . . into court with a verdict, it is not a matter of course to receive it in the form in which it is rendered. It is the duty of the Court . . . to look after its form and substance, so far as to prevent an unintelligible, or a doubtful, or an insufficient verdict from passing into the records of the court.

Id. at 143; see also State v. Gary J. Greer, No. M1998-00789-CCA-R3-CD, 2000 WL 284180, at * 5 (Tenn. Crim. App. at Nashville, Mar. 17, 2000). Based upon the possible confusion in Smith, this Court underscored that "if the trial court considered the verdict unclear, it should have requested the jury to return to deliberations with a direction to amend the verdict and put it in proper form."[8] Smith, 836 S.W.2d at 143. This Court has further indicated that

although a judge may not arbitrarily refuse to accept a jury's verdict and may not coerce the jury to reach a verdict, "the judge is entitled to satisfy herself that the

---

[8] Had the jury in the instant case been discharged, such clarification would not have been permissible; however, the defendant did not allege this, and we find no evidence of such in the record. See, e.g., State v. Green, 995 S.W.2d 591, 606-14 (Tenn. Crim. App. 1998).

jurors have truly rendered a unanimous verdict. The judge's concern may arise from words uttered by a juror, the improbability of a particular verdict or combination of verdicts, or even a juror's demeanor."

Gary J. Greer, 2000 WL 284180, at *5 (quoting State v. Apodaca, 940 P.2d 478, 483 (N.M. Ct. App. 1997)). From our review of the facts of the case presently before this Court, the trial judge had reason for concern and acted in conformity with these guidelines.

A review of the record reflects the following exchange upon the return of the verdict:

[Trial court:] I have been handed the verdict forms by the court officers and I need to ask you folks to acknowledge that your verdicts are, in fact, unanimous. As to Count One of the indictment, aggravated sexual battery, you found the defendant not guilty. If that is, in fact, your unanimous verdict, will you, please, indicate by raising your right hand. All right. As to Count Two of the indictment, aggravated rape, you found the defendant, not guilty. If that is your unanimous verdict will you, please, indicate by raising your right hand? We'll let the record reflect that the verdict is unanimous. As to Count Three, incest, you found the defendant not guilty. If that is, in fact, your unanimous verdict, will you, please, indicate by raising your right hand? Again let the record reflect that the verdict is unanimous. As to Cou[n]t Four, you found the defendant not guilty. If that is your unanimous verdict, will you, please, indicate by raising your right hands? Count Five, incest, you found the defendant not guilty. If that is your unanimous verdict, please indicate by raising your right hands? Okay. And finally as to Count Six, you found the defendant not guilty and again if that's your unanimous verdict, will you please indicate by raising your right hands? We'll let the record reflect that the verdict is unanimous.

[Foreman:] Your Honor, we found him guilty on some of those counts, on some of the lesser charges.

[Trial court:] Well, it said not guilty.

[Foreman:] Well, she just wrote it up wrong, Your Honor, that's not right.

[Female voice:] Look down below.

[Trial court:] Well, in each place it's not guilty.

[Foreman:] We found him not guilty of rape.

[Trial court:] Well, let me give you your verdict forms and go back in the jury room and take a look at them. I saw one of the ladies looking kind of funny when I read the verdict.

[Foreman:] It should be written in.

[Trial court:] I think the one you're referring to is this one, but there's a not there in front of it. Let me return the verdict forms to you and ask you to take them into the jury room and take a look at them. I don't think I'm reading them incorrectly. I think they say not guilty on each one of them

[Female voice:] We need someone to tell us how to prepare them correctly?

[Trial court:] Well, it simply needs to say if you found him guilty of a charge, you simply need to write in which charge you found beyond a reasonable doubt that you found him guilty of. Each of the blanks, at this point, say not guilty. I think if you'll look at them when you take them in there you'll see that. Please go back in and check the forms.

Thereafter the jury returned to the jury room and approximately four minutes later emerged. The colloquy which followed revealed that the jury had found the defendant not guilty of trial counts one, three, five, and six. However, the jury affirmed that they had found the defendant guilty of the lesser included offense of aggravated sexual battery on trial counts eight and twelve, both of which had charged the defendant with aggravated rape.

The trial court subsequently discharged the jury, and defense counsel "move[d] for a mistrial based on the confusion of the jury relative to rendering a verdict." Counsel argued that "as Your Honor read the counts and they actually reflected not guilty, I understand that the jury had not guilty on all of the forms and it reflected on all the counts." The trial court responded that the forms had indicated not guilty regarding the original charge but that the jurors "had circled the lesser included charge."[9] In addition, the court stated, "And as I was asking them for their verdict they started to raise their hands and a couple of the ladies on the back row were shaking their heads and it became obvious." Defense counsel subsequently replied, "I see. Okay. . . . Well, the record in the polling process that the jury did not acquiesce in the reading of the verdict as to two of the counts [sic]."

Based upon the above case law and the facts of this case, we find the trial court acted appropriately. The reporting of the verdict clearly evidenced confusion and that the jury's true verdict was not accurately reflected by what the court had initially announced. The trial court then gave the jury the opportunity to clarify its verdict on the verdict forms. During a period of time spanning approximately four minutes, the jurors retired, re-addressed the verdict forms,[10] and returned to the courtroom. The trial court then announced the verdict as to each offense, including the lesser included convictions on trial counts two and four. After this, the jurors unanimously indicated that this was, indeed, their verdict. Unlike the events following the first announcement, no indication exists in the record that this was not the outcome intended by the jury. As aforementioned, we find no error in the trial court's actions in this regard; thus, this issue lacks merit.

---

[9] The form for trial count two does have "aggravated sexual battery" circled, and there is a mark next to "aggravated sexual battery" on trial count four.

[10] We observe that appellate counsel for the State also found the verdict forms confusing.

-13-

**Sentencing**

Finally, the defendant asserts that the trial court improperly sentenced him to the maximum possible term within his range. Because of the relevant offense dates involved, we must address each sentence separately.

From our review of the record, we observe that the trial court sentenced the defendant under the 1989 Sentencing Reform Act. For the first of the defendant's convictions, the indictment alleges that the crime occurred between September 1, 1989, and October 31, 1989. The proof at trial does not provide a date beyond these for this offense. However, the 1989 Act did not go into effect until November 1st of that year. See Tenn. Code Ann. §§ 40-35-101 to -504. In dealing with these sentencing situations, our supreme court has stated

> that in order to comply with the ex post facto prohibitions of the U.S. and Tennessee Constitutions, trial court judges imposing sentences after the effective date of the 1989 statute, for crimes committed prior thereto, must calculate the appropriate sentence under both the 1982 statute and the 1989 statute, in their entirety, and then impose the lesser sentence of the two.

State v. Pearson, 858 S.W.2d 879, 884 (Tenn. 1993); see also Tenn. Code Ann. §§ 39-11-112, 40-35-117(b). Finding no indication in the record that the trial court did this regarding trial count two, we remand this matter to the trial court for re-sentencing involving these comparative calculations.

This concern is not present with the defendant's sentence arising out of trial count four. The proof regarding this offense indicates that the crime occurred in the fall of 1990, well after the effective date of the 1989 Sentencing Reform Act. We, therefore, analyze this allegation in keeping with the mandates of this portion of our code and related case law.

Tennessee Code Annotated section 40-35-401(d) in pertinent part provides that "[w]hen reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider a defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, the sentencing alternative arguments, the nature and character of the offense, the enhancement and mitigating factors, and the individual defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are also to recognize that the defendant bears the burden of demonstrating that the sentence is improper. Ashby, 823 S.W.2d at 169.

Furthermore, under Tennessee Code Annotated section 40-35-210, the presumptive sentence for a Class B, C, D or E felony is the minimum within the applicable range unless enhancement or mitigating factors are present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or

mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). Nevertheless, the trial court must make on the record specific findings of fact supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f).

In arguing against the sentence imposed, the defendant contends that the trial court used a statutorily non-existent enhancement factor. More specifically, the defendant avers that "[t]he court made a special remark that [the] defendant should be a Range II offender and for that reason increased" his sentence. Nevertheless, our review leads us to the opposite conclusion.

Responding to an argument made by the prosecution during sentencing, the trial court was clear that it would not be increasing the defendant's sentence on this basis. The trial court stated:

> The sentencing that I have to do today I can't say, well, he should have been Range II, but notice wasn't filed, therefore I'm going to increase the sentence for that reason. I can only increase the sentence based on the enhancing factors that are in the statute and my decision today is going to be based solely on the factors that are applicable to this case. I can't w[a]nder off on the other things. I don't want them in the record.

Shortly thereafter, the court sentenced the defendant to concurrent twelve-year terms[11] and methodically set out its rationale for doing so.

First the trial court correctly observed that as a Range I offender convicted of a B felony, the defendant's potential sentence must be "not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(a)(2). The trial court next stated that no mitigating factors had been presented, and in his brief the defendant concedes that "[t]here were no applicable mitigating factors." Moving to enhancement factors, the trial court found applicable factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," and factor (15), that "[t]he defendant abused a position of . . . private trust." Tenn. Code Ann. § 40-35-114(1), (15) (Supp. 2001).[12]

The record certainly supports both of these. For example, regarding factor (1), the defendant has two 1991 sexual battery convictions and a 1995 conviction for attempted aggravated sexual battery. Though these offenses occurred after the events forming the basis of the conviction for which the trial court was sentencing the defendant, the use of the prior convictions is appropriate. This Court has previously stated that trial courts "can consider criminal convictions or any other criminal behavior which occurred prior to the sentencing hearing as being 'a previous history of

---

[11] For the reasons above-stated, this portion of our review addresses only the sentence handed down for the offense occurring in the fall of 1990.

[12] A 2002 amendment to this statute added a new enhancement factor (1), renumbering the already existing factors (1) through (22) as (2) through (23). See Tenn. Code Ann. § 40-35-114 "Amendments" (Supp. 2002). For the purposes of this opinion, we will use the previous designations applicable at the time of sentencing.

criminal convictions or criminal behavior' under Tenn. Code Ann. § 40-35-114(1), regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration." State v. Ed Waters, No. 01-C-01-9106-CR-00158, 1992 WL 28457, at *3 (Tenn. Crim. App. at Nashville, Feb. 20, 1992); see also, e.g., State v. Servando Galvan, No. 01C01-9807-CC-00313, 1999 WL 618997, at *4 (Tenn. Crim. App. at Nashville, Aug. 13, 1999); State v. Terry Antonio Lawrence, No. 01C01-9603-CR-00122, 1997 WL 578995, at *3 (Tenn. Crim. App. at Nashville, Sept. 19, 1997). Furthermore, the trial court observed that all of these offenses involved children. Because of the similarity in offenses, the trial court gave this factor "considerable weight." Additionally, there is little doubt that factor (15) applies since the defendant is the victim's uncle to whom her parents entrusted her keeping on numerous occasions. See State v. Randall Vertis Grainger, No. M2001-02178-CCA-R3-CD, 2002 WL 31385936, at *8 (Tenn. Crim. App. at Nashville, Oct. 22, 2002); State v. Willard "Bill" Carpenter, No. 03C01-9180-CR-00268, 1992 WL 9516, at * 3 (Tenn. Crim. App. at Knoxville, Jan. 23, 1992). Though it is arguable that at least one additional enhancement factor is applicable, we need not extend this analysis since these factors support the sentence imposed by the trial court.[13]

### Conclusion

For the forgoing reasons we REMAND this matter for the trial court to make the required comparative analysis on the earlier of the defendant's aggravated assault convictions in this case. However, in all other respects we AFFIRM the trial court's actions.

_____
JERRY L. SMITH, JUDGE

---

[13] The defendant also argues that the prior convictions should be less persuasive because they took place years earlier and his current life manifests his rehabilitation. We find the trial court's usage of these convictions supported by the record. See, e.g., State v. Hoyt Edward Carroll, No. 03C01-9607-CC-00254, 1997 WL 457490, at *4 (Tenn. Crim. App. at Knoxville, Aug. 12, 1997).