# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 6, 2004

## STATE OF TENNESSEE v. JOSEPH RUSHING

**Direct Appeal from the Circuit Court for Humphreys County**
**No. 10221     Robert E. Burch, Judge**

---

### No. M2003-00101-CCA-R3-CD - Filed April 12, 2004

---

Defendant, Joseph Rushing, was indicted for one count of rape of a child and one count of aggravated sexual battery. Following a jury trial, the jury found Defendant guilty of count one, rape of a child. The State entered a nolle prosequi as to count two, aggravated sexual battery. Following a sentencing hearing, the trial court sentenced Defendant to twenty-three years imprisonment. On appeal, Defendant argues that (1) the trial court erred in allowing Defendant's statements to the police to be introduced at trial; (2) the sentence imposed on Defendant was excessive; (3) the evidence was insufficient to support Defendant's conviction for rape of a child; and (4) Defendant's conviction and sentence violated principles of fundamental fairness. After a careful review of the record in this matter, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

William B. Lockert, III, District Public Defender; and Richard D. Taylor, Jr., Assistant Public Defender, for the appellant, Joseph Rushing.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Lisa C. Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

On November 15, 2001, when he was five years old, M. J. told his school nurse, Allison Daniels, about abuse he had suffered. (We will refer to the victim by his initials). The victim did not testify at trial. Following two pre-trial hearings, M. J.'s statements to Ms. Daniels and Phyllis Thomason, a clinical social worker with Our Kids Center, were ruled admissible pursuant to Rule

803(4) of the Tennessee Rules of Evidence as statements made for the purpose of medical diagnosis and treatment. The trial court, however, excluded the victim's identification of his assailant in these interviews under the supreme court's holding in *State v. McLeod*, 937 S.W.2d 867 (Tenn. 1996).

Ms. Daniels said that M. J. told her that he wanted to whisper something into her ear. M. J. then whispered that his "private" was hurting and he did not know why. "Private" was M. J.'s word for his penis. M. J. explained that there was some redness and a white bump on his private. M. J. said that sometimes when he woke up, a person was in his bed playing with his private. M. J. told Ms. Daniels that the incident occurred "four years ago." Ms. Daniels asked M. J. if he had told anyone else, and M. J. replied that he told his mother and he thought that his mother had told his grandmother. Ms. Daniels did not examine M. J. or ask any further questions. Ms. Daniels called the Department of Children's Services later that afternoon.

Joseph Saladino, a social worker with the Department of Children's Services, was assigned to M. J.'s case. Mr. Saladino testified that he talked to M. J.'s mother, Bridget Rushing, and his step-father, Billy Rushing. Mr. Saladino said that the investigation, from the beginning, was focused on Defendant, who is Billy Rushing's younger brother.

M. J. was later interviewed by Ms. Thomason. Ms. Thomason and M. J. discussed various types of "good touchings" and "bad touchings." When asked if there was anything wrong with him, M. J. at first told Ms. Daniels that he had a cough and had bad dreams. Eventually, M. J. admitted that he was worried about the white bump on his "weenie." M. J. then described several sexual acts that had been performed on him including fellatio and anal sex. M. J. said that his assailant put dish soap or hand soap on his penis before inserting it into M. J.'s rectum. M. J. said the person also put his penis in M. J.'s mouth, and M. J. said that it "tasted nasty" and almost made him throw up.

On cross-examination, Ms. Thomas said that she did not ask M. J. if his bad dreams were sexually oriented and conceded the dreams could have been stress related.

Hollye Gallion, a pediatric nurse practitioner at Our Kids Center, gave M. J. a physical examination on December 28, 2001. Ms. Gallion testified that M. J. had a normal anal exam but explained that this was not unusual in child abuse victims. Ms. Gallion said that the majority of abused children have a normal exam because the rectal area is a muscle that is designed to expand and contract. Ms. Gallion said that a child was less likely to exhibit an anal injury if a lubricant was used. On cross-examination, Ms. Gallion confirmed that M. J. had no sexually transmitted diseases, and the exam did not indicate any physical problems.

Jenny Brown, the manager of Creekview Manor Apartments, testified that Bridget and Billy Rushing executed an amendment to their lease adding Defendant as an occupant of their apartment effective April 1, 1998. Ms. Brown confirmed on cross-examination that Defendant was on the lease until the Rushings moved out in November 1998.

Amy Farmer took over M. J.'s case at the Department of Children's Services when Mr. Saladino left. On January 29, 2002, Ms. Farmer accompanied Larry Lescure, a detective with the Waverly Police Department, to pick Defendant up at his residence. Defendant was transported back to the police department for an interview. Defendant was read his Miranda rights prior to the start of the interview. Ms. Farmer said that Detective Lescure was polite to Defendant and did not make any threats or use harsh words. Ms. Farmer said that she did not stay for the entire interview because Defendant was uncomfortable talking in her presence. She rode with Detective Lescure, however, when he drove Defendant home, and Ms. Farmer said that Defendant was cordial during the ride.

On cross-examination, Ms. Farmer said that Defendant told her and Detective Lescure about another potential suspect. Ms. Farmer said that she and Detective Lescure later informally spoke with the individual identified by Defendant, but there was no evidence that the other person was implicated other than Defendant's allegation.

Detective Lescure said that Defendant waived his Miranda rights in writing on January 29, 2002, at 2:50 p.m., and the interview was concluded at 4:00 p.m. Detective Lescure said that Defendant was cooperative during the interview. Defendant gave a written statement in which he described the following events that occurred at the Creekview Manor Apartments two to three years prior to Defendant's arrest. Defendant said that he caught M. J. twice in the bathroom masturbating. Later, M. J. walked into Defendant's bedroom and caught Defendant watching a pornographic movie. Defendant turned the video off and left the room. Some time later, M. J.'s mother and step-father told Defendant that M. J. was in Defendant's bedroom watching the movie. Two or three days later, M. J. came into Defendant's bedroom while Defendant was sleeping. M. J. rubbed his buttocks against Defendant's penis. Defendant said that "he ejaculated one inch to three-fourths of an inch," and then M. J. rolled over and rubbed his penis against Defendant's penis.

Defendant was interviewed a second time on February 5, and this interview lasted a little over one hour. Defendant again was read his Miranda rights and signed a waiver acknowledging that he understood his rights. In his second written statement, Defendant said that M. J. caught him watching a pornographic movie. That night, M. J. came into Defendant's bedroom and rubbed his buttocks against Defendant's penis for about five minutes. M. J. then rolled over and began rubbing his penis against Defendant's penis. Defendant said that there might or might not have been some penetration, "but [his] penis was in [M. J.'s] butt cheeks." Defendant said that he and M. J. did not converse at all. Defendant stated that the reason he lied in his first statement was because he was scared.

Detective Lescure testified that after a break, however, Defendant orally admitted that he believed that he inserted his penis into M. J.'s rectum about one inch or three-quarters of an inch, but Defendant said that he ejaculated on the outside of M. J.'s buttocks.

On cross-examination, Detective Lescure denied that he told Defendant he would receive counseling instead of "jail time" if he made a statement, but he may have mentioned the possibility of counseling at some point during the interview. Detective Lescure also denied using the district

attorney's office as a threat. He said that he only told Defendant that he did not make decisions by himself and that he would like to be able to tell the district attorney's office that Defendant was telling the truth. Detective Lescure denied telling Defendant what to say after the break during the second interview.

Detective Lescure said that it was the Department of Children's Services' role to investigate any other potential abusers in the case. Detective Lescure talked to M. J.'s mother and step-father but found no evidence that they were involved in the incident.

Bridget Rushing, M. J.'s mother, admitted that her son told her about the abuse before his conversation with Ms. Daniels, but Ms. Rushing did not report the abuse because M. J. changed his stories. Ms. Rushing said that she had an impression that M. J. might be lying. Ms. Rushing said that Defendant's counsel talked to M. J. before the trial, and M. J. told him that Defendant had put his penis in M. J.'s bottom about a hundred times.

## II. Suppression of Statement

Defendant argues that his statements to the police were made solely because he was led to believe that he would receive counseling in lieu of incarceration if he cooperated. Defendant filed a pre-trial motion to suppress his statements. Other than a reference in the record by the trial court during a Tenn. R. Evid. 412 hearing that Defendant's "other motions" had been denied, there is no indication in the record that a pre-trial suppression hearing was held or that an order was entered disposing of Defendant's motion to suppress. Nonetheless, relying on this Court's decision in *State v. Blocker*, No. E1999-01624-CCA-R3-CD, 2000 WL 726447 (Tenn. Crim. App., Knoxville, June 5, 2000), *perm. to appeal denied* (Tenn. 2001), Defendant argues that this Court may consider evidence in the record to determine whether his statements to Detective Lescure should have been suppressed even in the absence of a pretrial suppression hearing.

*Blocker*, however, is clearly distinguishable from the case *sub judice*. A suppression hearing was held in *Blocker* prior to trial, and, based on the evidence presented at the hearing, a panel of this court concluded that the trial court did not err in denying defendant's motion to suppress pre-trial. *Blocker*, 2000 WL 726447, *3. Other evidence presented at trial, however, raised concerns about the voluntariness of the defendant's statement. Following the supreme court's direction that appellate courts may consider evidence presented at trial in evaluating the correctness of the trial court's ruling on a motion to suppress, this court determined that a remand was necessary in light of the evidence introduced at trial. *Id.* (quoting *State v. Henning*, 975 S.W.2d 290, 297-98 (Tenn. 1998)).

This is not the situation in the case *sub judice*. There is no transcript in the appellate record of any suppression hearing. There is only a brief reference in the record that the trial court may have heard and denied Defendant's motion. Our jurisdiction is appellate only; appellate courts generally do not review issues not presented to or dealt with by the trial court. Tenn. Code Ann. § 16-5-108; Tenn. R. App. P. 36(a); *see State v. Middlebrooks*, 840 S.W.2d 317, 334 (Tenn. 1992). Moreover,

Defendant failed to include the suppression issue in his written motion for new trial. Tenn. R. App. P. 3(e). As a result, review of this issue is waived. *Id.*

### III. Sufficiency of the Evidence

Defendant argues that the evidence only supports a conviction of misdemeanor assault. Defendant contends that there was no evidence of penetration other than the victim's statements, and the victim's statements are neither credible nor supported by physical evidence.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the State in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

Rape of a child is defined as the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, when the victim is less than thirteen years old. Tenn. Code Ann. 39-13-522. Unlawful sexual penetration includes anal intercourse and fellatio. *Id.* § 39-13-501(7). Defendant argues that his written statements do not contain any admission of penetration. He admits that he ejaculated on M. J.'s buttocks but argues that this constitutes at most an offensive touching, or misdemeanor assault. M. J., on the other hand, told the counselor at Our Kids Center that Defendant placed his penis in his rectum and mouth. M. J. also told Defendant's counsel that Defendant had placed his penis in M. J.'s bottom but said that Defendant had not touched him in any other way. Detective Lescure testified that Defendant orally admitted during the second interview that he placed his penis inside M. J.'s rectum. Defendant admitted that the incidents occurred at the Creekview Manor Apartments.

Based on the foregoing, we conclude that the evidence was sufficient to support Defendant's conviction of rape of a child. Any issues concerning the credibility or inconsistencies in M. J.'s statements and the testimony at trial were left to the trier of fact. Defendant is not entitled to relief on this issue.

## IV. Sentencing Issues

Defendant argues that his sentences are excessive because the trial court improperly applied enhancement factors and failed to properly consider mitigating factors. Following Defendant's sentencing hearing, the trial court found applicable enhancement factor (8), that the offense was committed to gratify Defendant's desire for pleasure or excitement, and enhancement factor (16), that Defendant abused a position of private trust. Tenn. Code Ann. §§ 40-35-114(8) and (16). The trial court found that Defendant's lack of a prior criminal history was entitled to some weight in mitigation of the length of his sentence. *Id.* § 40-35-113(13). The trial court, however, declined to apply mitigating factor (6), that Defendant lacked substantial judgment in committing the offense because of his age. *Id.* § 40-35-113(6). The trial court also found that Defendant did not show any remorse and determined that the facts did not support a finding that Defendant cooperated with the authorities. *Id*. § 40-35-113(13). The trial court sentenced Defendant as a Range I standard offender to twenty-three years in the Tennessee Department of Correction to be served at 100% as a child rapist. *Id*. §§ 39-13-523(a)(1) and (b).

When a defendant challenges the length and manner of service of his sentence, this Court conducts a *de novo* review on the record with a presumption that the trial court's determinations are correct. *Id.* § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record, as is the case here, that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999). The appealing party has the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

In conducting our *de novo* review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the argument of counsel as to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancing factors; and (g) any statements made by the defendant in his or her own behalf. *Id.* § 40-35-210. If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000).

The offense of rape of a child is a Class A felony. Tenn. Code Ann. § 39-13-522(b). The presumptive sentence for a Class A felony is the midpoint of the range if there are no enhancement or mitigating factors. *Id.* § 40-35-210(c). Should there be both enhancement and mitigating factors, the trial court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. The weight assigned to any factor is left to the trial court's discretion as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. *State v. Moss*, 727 S.W.2d 229, 238 (Tenn. 1986); *State v. Kelly*, 34

S.W.3d 471, 479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

Defendant argues that the trial court erred in not considering whether or not he should be granted an alternative sentence. The trial court, however, correctly concluded at the sentencing hearing that Defendant, who was convicted of the Class A felony of rape of a child, with a sentencing range in excess of eight years, was not eligible for either probation or participation in a community corrections program. Tenn. Code Ann. §§ 40-35-102(6); 40-35-303(a) and 40-36-106(a)(1)(B).

The trial court did not identify the specific grounds upon which it applied factor (8), that the offense was committed to gratify Defendant's desire for pleasure or excitement, other than to note in general that the factor was supported by the record. Nonetheless, our *de novo* review finds that application of this factor is appropriate. Essential to finding this factor appropriate is the motive of the defendant in committing the offense. *State v. Kissenger*, 922 S.W.2d 482, 490 (Tenn. 1996). Motive may be evidenced through a defendant's admissions, a defendant's sexual behavior toward the victim, or behavior demonstrating the defendant's enjoyment of the rape. *State v. Arnett*, 49 S.W.3d 250, 262 (Tenn. 2001). M. J. told Ms. Thomason at Our Kids Center that his assailant lubricated his penis with soap before placing his penis in M. J.'s "bottom." Defendant said that he placed his penis in the victim's buttocks, after which he and the victim rubbed their penises together. Defendant admitted that he was watching pornographic movies during the general time period before his criminal acts. This is sufficient evidence to support a finding of the applicability of enhancement factor (8). *See id*. (citing *State v. Eldred Reid*, No. 01C01-9511-CC-00390, 1997 WL 311916, at *6 (Tenn. Crim. App., Nashville, June 6, 1997), *perm. to appeal denied* (Tenn. 1998) ("applying the factor where defendant kissed and fondled the victim, told her they were going to "have some fun," and lubricated himself and the victim prior to penetration."))

The trial court properly applied enhancement factor (16), that Defendant violated a position of private trust. Defendant is the victim's step-uncle, he and the victim lived in the same household when the offense was committed at Creekview Manor Apartments, and M. J. told Ms. Thomason that his mother and father were gone when the offenses occurred. *See State v. Jordan*, 116 S.W.3d 8, 24 (Tenn. Crim. App. 2003).

Defendant argues that the trial court failed to properly weigh the applicable mitigating factors. Defendant submits that he was only sixteen or seventeen years old when the offenses occurred, he only has a single prior conviction, he is gainfully employed, and he has expressed remorse for the offenses. Defendant also argues that the trial court failed to consider his potential for rehabilitation in determining the length of his sentence. *See* Tenn. Code Ann. § 40-35-103(5).

Defendant argues that the trial court erred when it refused to acknowledge Defendant's age as a mitigating factor to the offense. The trial court, however, did consider Defendant's youth but found that his age did not influence his judgment in committing the offense. The evidence does not preponderate against the trial court's finding. A defendant's youth should be considered in the

context of the "defendant's education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." *State v. Adams*, 864 S.W.2d 31, 33 (Tenn. 1993). We are unable to find anything in the record to indicate that Defendant was not able to appreciate the nature of his conduct. Finally, contrary to Defendant's assertions, the trial court did consider whether or not Defendant was remorseful for his actions or cooperated with the police as mitigating factors in determining the length of his sentence but found that neither factor was supported by the evidence. The evidence does not preponderate against the trial court's findings. Based on the presence of two enhancement factors, and the little weight attributed to the one mitigating factor, we conclude that Defendant's sentence of twenty-three years was appropriate.

## V. Fundamental Fairness

Defendant argues that his conviction and sentence violate principles of fundamental fairness because he was only sixteen or seventeen years old when he committed the offenses. The indicted offense occurred between April and November, 1998 while Defendant and M. J. both resided at Creekview Manor apartments. Defendant, whose birthday is March 27, 1981, was seventeen years old at this time. M. J. was three years old. M. J. did not report the abuse to a non-family member until November 15, 2001 when Defendant was twenty years old. Defendant acknowledges that the proceedings against him were properly initiated in juvenile court, and he does not question the appropriateness of his transfer to circuit court to be tried as an adult. *See* Tenn. Code Ann, § 37-1-134 Defendant, however, appears to argue that the juvenile court retained jurisdiction until the transfer hearing on March 6, 2002, and Defendant, therefore, should have been permitted to have a parent, guardian or his counsel present when he was interviewed by Detective Lescure.

Defendant was almost twenty-one years old when he was interviewed by the police. He was married and employed. There is nothing in the record to indicate that Defendant did not knowingly and voluntarily waive his right to counsel during the interviews. *Miranda v. Arizona*, 384 U.S. 436, 471-75, 86 S. Ct. 1602, 1626-28, 16 L. Ed. 2d 694 (1966). Moreover, even if Defendant had been a juvenile when he was interviewed, this Court has previously held that the admissibility of a juvenile's confessions is not dependent upon the presence of his or her parents in the interview room. *Kerry Joe Bradley v. State*, No. M2000-02222-CCA-R3-PC, 2002 WL 21684 (Tenn. Crim. App., Nashville, Jan. 8), *perm. to appeal denied* (Tenn. 2002); *State v. Steven D. King*, No. 02C01-9509-CR-00280, 1997 WL 41256 (Tenn. Crim. App., Jackson, Feb. 4, 1997), *no perm. to appeal filed* (citing *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975)). Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE