IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 03, 2009

STATE OF TENNESSEE v. JOHN ANTHONY CLINE

Direct Appeal from the Circuit Court for Henry County
No. 14172    Donald E. Parish, Judge

No. W2008-01686-CCA-R3-CD  - Filed September 29, 2009

The Defendant-Appellant, John Anthony Cline, was convicted by a Henry County Circuit Court jury of theft of property worth $1,000 or more but less than $10,000. The State filed a notice of intent to seek enhanced punishment based on several prior convictions. The trial court sentenced Cline as a Range II, multiple offender and imposed an eight-year sentence at thirty-five percent. In this appeal, Cline challenges (1) the sufficiency of the evidence and (2) the sufficiency of the State's notice to seek enhanced punishment. Upon review, we affirm the judgment of the trial court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Guy T. Wilkinson, District Public Defender; W. Jeffery Fagan, Assistant District Public Defender, Camden, Tennessee, for the defendant-appellant, John Anthony Cline.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa S. Roberge, Assistant Attorney General; Hansel J. McCadams, District Attorney General; Beth B. Hall and R. Adam Jowers, Assistant District Attorneys General, for the appellee, State of Tennessee.

OPINION

FACTUAL BACKGROUND

On June 7, 2005, a dirt bike motorcycle ("dirt bike") was stolen from the Alexander residence in Puryear, Tennessee, in Henry County. Subsequently, the dirt bike was recovered at Cline's residence in McNair County. Cline was convicted of theft of property worth $1,000 or more but less than $10,000. The trial court sentenced Cline as a Range II, multiple offender and imposed an eight-year sentence at thirty-five percent, and the judgment was entered on February 22, 2008. On March 20, 2008, Cline filed his motion for a new trial and later his amended motion for a new trial, which were denied by the trial court. Cline filed a timely notice of appeal.

**Trial.** The State's witnesses included Brenda Alexander, Brian Sykes, Officer Joe Kemp, Investigator Ronald Aker, Officer Alan Strickland, and Steve Delaney. Cline's father, John Henry Cline, testified for the defense. The Defendant-Appellant did not testify.

Brenda Alexander testified that on June 7, 2005, the day that her son's dirt bike was stolen, she was on her front porch getting ready to go to work when she saw two men in a "'96 model bluish green Monte Carlo" pull into the shared driveway between her house and her neighbor's house at approximately 3:30 p.m. She observed the men for about fifteen minutes from a distance of fifteen to twenty-five feet while they looked at a pick-up truck that her neighbor had for sale. She stated that she could see the driver of the car "very well" during this time period. When the two men finished looking at the truck, they turned their car around and pulled up "real[ly] close to [her] carport". They "sat there for maybe three minutes" while they looked into her carport. Alexander said that when the men drove close to her carport, the dirt bike was parked in her carport, and the keys were in the ignition of the bike. She said that around 5:30 p.m. her son called her at work to ask if she had moved the dirt bike. When she and her son realized that the dirt bike had been stolen, they called the police and filed a report. A few hours after filing the police report, Alexander spoke with Brian Sykes, a neighbor a few houses down the street, who informed her that he believed he had seen a man without a helmet riding the dirt bike around the time that it had been stolen. Anderson stated that when the dirt bike was recovered, the wiring, battery, plastic, fender, tires, and seat were seriously damaged.

Brian Sykes testified that on June 7, 2005, at about 4:45 p.m. he noticed a man without a helmet riding a dirt bike on the highway. Sykes stated that the dirt bike was being followed by what appeared to be "a late '90's model Chevrolet Monte Carlo." He said that he noticed the driver of the dirt bike because he was shaking his head from side to side as he drove down the highway. He saw the dirt bike and the car again about thirty minutes later. Sykes testified that when he returned home he went to the house across the street from the Alexanders where he first heard about the theft of the dirt bike. Sykes stated that he was "75 percent sure" that the driver of the dirt bike on the highway was Cline, but he could not say that the driver was Cline beyond a reasonable doubt. When Sykes was shown the pictures of Cline and Sam Reeves by Investigator Aker, Sykes identified Cline as the individual he saw riding the dirt bike without a helmet on June 7, 2005. Sykes said that he never saw Sam Reeves with Cline on June 7, 2005.

Officer Forest Kemp of the Henry County Sheriff's Department testified that he was the first officer to arrive at the Alexander residence after the theft of the dirt bike had been reported. He wrote down the pertinent information about the dirt bike and passed it along to the dispatcher, who then entered the information into the NCIC database on June 8, 2005. Officer Kemp stated that the case was then turned over to the county's criminal investigation department.

Investigator Ronald Aker of the Henry County Sheriff's Department testified that he spoke with the Alexanders and Brian Sykes about the stolen dirt bike . He stated that there were no leads in the case until 2006 when the Alexanders received a tip that the dirt bike was in McNairy County at Cline's residence. Investigator Aker contacted Officer Strickland at the McNairy County Sheriff's Office with the information. Officer Strickland called him back, informing him that the dirt bike was at Cline's residence and that it was, in fact, the dirt bike that had been stolen. Upon learning that the

bike was stolen, Investigator Aker obtained pictures of Cline and Reeves and showed them to Alexander. Alexander identified Cline as the individual that she had seen in her driveway on June 7, 2005, the day the dirt bike was stolen.

Officer Alan Strickland of the McNairy County Sheriff's Department testified that he started investigating the theft of the dirt bike after talking to Investigator Aker. Officer Strickland said that he spoke with Cline's father at the Cline residence where the dirt bike was recovered. Cline and his father showed him the dirt bike. When he checked NCIC regarding the dirt bike, it was listed as stolen, and he impounded the bike. Officer Strickland stated that Cline told him that he had retrieved the dirt bike from Delaney's Wrecker Service and that he had originally gotten the bike from Sam Reeves. Cline told him that "he had [gone] to jail over some thefts that involved Mr. Reeves. And when he got out, that's when he got the call from Delaney's about the motorcycle." Officer Strickland acknowledged that Cline was cooperative when he was investigating the stolen dirt bike at the Cline residence.

Steve Delaney, the owner of Delaney's towing company in Savannah Tennessee, testified that in July of 2005 his towing company impounded the dirt bike at the request of the Hardin County Sheriff's department. He said that the dirt bike sat in his impound lot for about a year before the sheriff's department ordered that it be released to Cline. Delaney said that he sent a certified letter to Cline to pick up the dirt bike. He further stated that eighty-nine days after he mailed the certified letter, Cline picked up the dirt bike and paid the $350 storage fee.

Cline's father, John Henry Cline (hereinafter "J.H. Cline"), testified that the Defendant-Appellant was his son. He stated that in 2005 he was living with his son and his son's fiancé in a trailer on property owned by Sam Reeves. He explained that Sam Reeves was the uncle of his son's fiancé. J.H. Cline stated that he had seen the dirt bike in question at his son's home and at Sam Reeves's home. He said that Sam Reeves initially brought the bike to his residence and that his son was not at home at the time. J.H. Cline acknowledged that he signed the consent to search the property when the dirt bike was discovered next to the trailer he shared with his son. He claimed that Sam Reeves had left the bike there the night before the search. He also stated that he gave his son money to get the dirt bike out of Delaney's impound lot so that they could resell it.

**Sentencing Hearing.** At the sentencing hearing, the State requested that Cline be sentenced as a Range III, persistent offender based on certain prior convictions that were similar in nature to the underlying conviction in this appeal. Of the ten convictions listed on the State's notice of intent to seek enhancement, the State acknowledged that five of the convictions could not be used to enhance the range because the offense dates for those convictions occurred after the date of the offense in this case.[1] The State instead relied on the five prior burglary convictions from Illinois.

---

[1]We note that a trial court can consider criminal behavior or convictions occurring prior to the sentencing hearing as "a previous history of criminal convictions or criminal behavior" under section 40-35-114, "'regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration.'" State v. Jordan, 116 S.W.3d 8, 24 (Tenn. Crim. App. 2003)

(continued...)

-3-

None of the dates of conviction on the State's notice of intent to seek enhancement were the same as the dates of conviction listed in the presentence report and the certified copies of the judgments. In addition, the State's notice indicated that one of the convictions was from Chicago, Illinois, rather than from a neighboring county, Kane County, Illinois. The trial court concluded that the State's notice of intent to seek enhancement was sufficient as to four of the five convictions from Illinois but that the conviction from Kane County, Illinois could not be used because it did not satisfy the notice requirement. The trial court then held that Cline would be sentenced as a Range II, multiple offender and imposed a sentence of eight years at thirty-five percent.

**Motion for a New Trial.** Cline filed a motion and an amended motion for a new trial, contending that the evidence presented at trial was insufficient to sustain his conviction; that the trial court erred in determining that the State's notice of intent was sufficient before sentencing Cline as a Range II, persistent offender; and that the trial court erred in sentencing Cline consecutively to a prior conviction in a separate case in Hardin County. During this hearing, Cline's attorney admitted that Cline had suffered no prejudice from the State's notice of intent to seek enhanced punishment:

> I can't say that my client was prejudiced because he did not know that his prior convictions were going to be used because [the State] supplied us with the notice of enhanced punishment. So we were put on notice that he had a prior record. We were not put on notice of the proper conviction dates, but going back to case law in the State of Tennessee that's something that can be cured . . . .

At the conclusion of the hearing, the trial court denied the motion and amended motion for a new trial.

## ANALYSIS

**I. Sufficiency of the Evidence.** Cline contends that the evidence was insufficient to convict him. He argues that the inconsistencies in the State's case prevented the evidence from being sufficient and that the fact that Cline paid to retrieve the bike from the Delaney's impound lot, never disposed of the dirt bike, and fully cooperated with law enforcement proved that he is not guilty of theft. In response, the State argues the proof showed that Cline was seen at the residence where the theft occurred only a few hours before the theft, that he was seen riding the dirt bike around the time the dirt bike was stolen, and that the bike was ultimately found in his possession, which was

---

[1](...continued)
(quoting State v. Ed Waters, No. 01-C-019106-CR-00158, 1992 WL 28457, at *3 (Tenn. Crim. App., at Nashville, Feb. 20, 1992)). However, the rule in Jordan should not be used when determining a defendant's sentencing range. Regarding sentencing range, "[t]he prior felony convictions used to trigger the multiple offender status must have occurred prior to the commission of the offense for which the defendant is being sentenced." Sentencing Comm'n Comments, T.C.A. § 40-35-106 (1997); see also State v. Wilburt Vantressee Gooch, No. 01C01-9304-CR-00139, 1994 WL 194263, at *2 (Tenn. Crim. App., at Nashville, May 19, 1994).

sufficient evidence for a jury to find beyond a reasonable doubt that Cline stole the dirt bike. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978)), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing Tuggle, 639 S.W.2d at 914.

"The identity of the perpetrator is an essential element of any crime." State v. Robert Wayne Pryor, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App., at Nashville, Apr. 19, 2005) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." Id. (citing State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). The State may prove the perpetrator's identity using only circumstantial evidence. State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citing State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002)). However, where the defendant is convicted based on only circumstantial evidence, the evidence must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)). This court has clearly identified the situations in which solely circumstantial evidence can be used to convict a defendant:

The law is firmly established in this State that to warrant a criminal conviction upon circumstantial evidence alone, the evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he is the one who committed the crime.

Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970). The jury must determine the weight given to circumstantial evidence. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974). This court may not "substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact." Carruthers, 35 S.W.3d at 557 (citing Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956)). However, "[a] verdict of a jury may not be based alone upon conjecture, guess, speculation or a mere possibility." State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987) (quoting Sullivan v. State, 513 S.W.2d 152, 154 (Tenn. 1974)).

The record shows that the State presented sufficient proof to convict Cline. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103.   Theft of property worth $1,000 or more but less than $10,000 is a Class D felony. T.C.A. § 39-14-105.

In order to convict Cline in this case, the jury had to find beyond a reasonable doubt that he knowingly obtained or exercised control over the dirt bike with the intent to deprive the owner of the property and without the owner's consent. See T.C.A. § 39-14-103.  There is sufficient circumstantial evidence establishing Cline as the perpetrator in this case.  The proof showed that Alexander witnessed Cline at her property a few hours before the dirt bike was stolen,  that Sykes witnessed Cline driving the dirt bike around the time that the theft occurred, and that the dirt bike was found in Cline's possession.  The proof supported the jury's decision that Cline was the individual who stole the dirt bike.  Accordingly, the evidence was sufficient to support Cline's conviction for theft.

**II.  Notice to seek Enhancement.**  Cline also argues that the trial court erred in using the State's notice of enhancement to sentence him as a Range II, multiple offender.  He claims that the notice was defective because the dates of conviction were incorrect.  He also contends that the case law and the statute regarding the notice of intent to seek enhanced punishment given to a defendant are in direct conflict.  In response, the State argues that the trial court properly sentenced Cline as a Range II, multiple offender.  Specifically, it contends that the case law does not require perfect notice but requires only that the defendant be put on notice that the State is seeking to enhance a sentence. Additionally, the State argues that Cline cannot demonstrate any prejudice because of the incorrect dates of conviction on the notice.  We agree with the State.

Tennessee Code Annotated section 40-35-202(a) provides that if the State believes that a defendant's sentence should be enhanced, it "shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea." T.C.A. § 40-35-202(a). This statement "must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions." Id. The purpose of the statement is

to provide notice to a defendant that he is exposed to enhanced sentencing beyond the standard range, to encourage plea bargain agreements, to help the defendant make an educated decision before entering a plea of guilt, and to assist with trial strategy. State v. Livingston, 197 S.W.3d 710, 712 (Tenn. 2006) (citing State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990); State v. Taylor, 63 S.W.3d 400, 412 (Tenn. Crim. App. 2001)). Regarding the accuracy of the information on the notice of intent, the Tennessee Supreme Court has stated: "When a detail of the required information is omitted or incorrect, the inquiry should be whether the notice was materially misleading. Where an ambiguity or contradiction appears on the face of the notice, defendant has a duty to inquire further." Adams, 788 S.W.2d at 558. "While 'perfect' notice is not required . . . some notice meeting the minimal requirements of the statute be given." Livingston, 197 S.W.3d at 713. At a minimum, the statute requires "that the State file: (1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions." Id. at 713-14 (internal footnote omitted). In situations where the notice is filed late or the notice is filed on time but is defective, "the defendant must show prejudice before the notice will be rendered ineffective." State v. Carter, 121 S.W.3d 579, 585 (Tenn. 2003) (citing State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1988); State v. Debro, 787 S.W.2d 932, 933-34 (Tenn. Crim. App. 1989)). "The district attorney has the discretion to seek enhanced sentencing, and it is the district attorney's responsibility to provide notice to the court and the defendant pursuant to statute." Carter, 121 S.W.3d at 584 (citing Adams, 788 S.W.2d at 559).

Here, the State filed its notice of intent to seek enhanced punishment more than ten days before trial. This notice listed five burglary convictions from the state of Illinois. We note the trial court declined to use the conviction that was incorrectly listed as occurring in Chicago, Illinois rather than Kane County, Illinois. We also note that the trial court at the motion for a new trial hearing stated that it was relying on two of the remaining four convictions to sentence Cline as a Range II, multiple offender. See T.C.A. § 40-35-106(a)(1). According to the presentence report, Cline had been convicted of only five burglary offenses in that state. Despite the fact that the dates of the listed convictions were incorrect, Cline's record matched the convictions in the notice. See Debro, 787 S.W.2d at 934 (concluding that a defendant is not presumed ignorant of his prior record). The State's notice made Cline aware of the offenses the State intended to use to enhance his sentence range. Moreover, Cline admitted at the motion for new trial hearing that he suffered no prejudice from the State's notice of intent. Accordingly, we conclude that Cline was not prejudiced by the incorrect dates of conviction in the State's notice and that the trial court did not err in using the State's notice in sentencing Cline as a Range II, multiple offender.

**Conclusion**. Because the evidence presented at trial was sufficient for a reasonable trier of fact to convict Cline of theft of property and because Cline suffered no prejudice from the State's notice of intent to seek enhanced punishment, we affirm the trial court's judgment.

_____
CAMILLE R. McMULLEN, JUDGE