# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs February 27, 2013 at Knoxville

## STATE OF TENNESSEE v. RICKY EARL GENES

**Appeal from the Circuit Court for Hickman County**
**No. 2010-CR-5179     Derek K. Smith, Judge**

---

**No. M2012-02284-CCA-R3-CD - Filed April 8, 2013**

---

The defendant, Ricky Earl Genes, pleaded guilty to three counts of aggravated assault, and the Hickman County Circuit Court sentenced him as a Range I, standard offender to a term of 18 years' imprisonment. On appeal, the defendant argues that the trial court erred in its application of certain enhancement factors. In addition, the defendant challenges both the manner of service and the alignment of his sentences. Discerning no error, we affirm the judgments of the trial court.

## Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

James R. Potter, Clarksville, Tennessee, for the appellant, Ricky Earl Genes.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Kim R. Helper, District Attorney General; and Michael J. Fahey, II, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 4, 2010, the Hickman County Grand Jury charged the defendant with four counts of attempted first degree murder, four counts of aggravated assault, and four counts of felony reckless endangerment arising out of a single episode on February 2, 2010. On May 24, 2012, the defendant, who was 19 years old at the time of the offenses, pleaded guilty to three counts of aggravated assault. Pursuant to the plea agreement, the State recommended that the defendant be sentenced as a Range I, standard offender, but the plea agreement left sentencing to the trial court's discretion.

At the plea submission hearing, the State offered the following facts in support of the plea:

[O]n the date alleged in the indictment, a gentleman here, who had a home here in Hickman County, Norman Roberts, he had a . . . niece who also lived here named Levika Woodard, who was a co-defendant in this case. That Ms. Woodard had been dating the defendant, Mr. Genes, for approximately five, six months, something to that effect. That there had been some phone calls, or at least an attempt to have some phone calls, between Levika Woodard, [the defendant] and her uncle, Norman Roberts, concerning personal matters. That on the date alleged in the indictment, the date of the offense, Ms. Woodard was going to take Mr. Genes back to Clarksville, . . . where his mother lived. He had been staying here in Hickman County with Ms. Woodard. That he asked if they were not going to go by [Mr. Roberts's] house, the uncle. That they then drove by his house. [Mr. Roberts] would testify that when he came out that he saw Ms. Woodard's car, that the passenger window was facing towards his house. It's a pretty short drive and it's a pretty short distance from the road. That [Mr. Roberts] went out to get his dog. That he heard Ms. Woodard say, do you want to talk to me now, or something to that effect. At which point, he . . . started walking back into his home. His wife was also at home. She had, at this point, flipped on lights. And then gun shots rang out, placing [Mr. Roberts] in fear as he's going back into his house. Placing his wife in fear, who's in the area between the dining room and the kitchen. And then also placing the daughter in fear, who's listed as the victim in count seven. There was actually another individual in the home, as well, but in this case the plea is to three counts.

. . . .

The proof would show then that Ms. Woodard drove [the defendant], and there were two other people in the backseat of the vehicle, to Nashville. That she then came back and, later that evening, turned herself into police here. She gave statements. She indicated who [the defendant] was. Police then began looking for [the defendant]. The State would have proof

that, in a short time later, the Bolivar Police . . . received a disturbance call about a domestic issue. They responded. [The defendant's] uncle, actually in Bolivar, told police that . . . [the defendant] was there, that they'd had some type of conflict. That . . . [the defendant], in fact, had a warrant out for, from Hickman County. Bolivar Police spotted that vehicle, that had been identified that [the defendant] was in, and placed [the defendant] under arrest, and found, underneath one of the front seats, a 9 millimeter gun. Ms. Woodard had identified one of the weapons as being a 9 millimeter that [the defendant] carried. That gun would – there would be testimony that that gun was matched up to bullets recovered from the scene. Matching, as being the weapon that fired at least some of the bullets. There would be actually proof that there were actually two weapons that fired into the home. So that would have tied in [the defendant], along with Ms. Woodard's testimony identifying him as the shooter. . . .

At the July 18, 2012 sentencing hearing, the State entered into evidence the defendant's presentence report, which listed four prior misdemeanor convictions: a 2009 conviction of simple possession of a controlled substance; a 2009 conviction of failure to appear; and 2010 Hardeman County convictions of unlawful possession of a firearm and criminal impersonation, apparently arising out of his arrest in Bolivar. On the conviction of simple possession, the defendant was sentenced on August 13, 2009, to 11 months, 29 days' supervised probation.

In determining the defendant's sentence, the trial court found that seven enhancement factors were applicable: the defendant had a previous history of criminal convictions; the defendant was the leader in the commission of the offense which involved two or more criminal actors; the offense involved more than one victim; the property damage sustained by the victims was particularly great; the risk to human life was high; the defendant was on probation at the time of the commission of the crime; and the defendant had been adjudicated to have committed an offense as a juvenile that would have constituted a felony if committed as an adult. *See* T.C.A. § 40-35-114(1), (2), (3), (6), (10), (13), (16). As for mitigating factors, the court noted that the defendant had expressed remorse in his allocution and that the defendant was young. With respect to the manner of service, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense, and the court "put some weight" on the fact that measures less restrictive than confinement had recently been applied unsuccessfully to the defendant. *See* T.C.A. § 40-35-103(1)(B), (C). The court also found the defendant to be a dangerous offender who did not hesitate to

-3-

commit a crime when the risk to human life was high and found that the offenses at issue were committed while the defendant was on probation. *See* T.C.A. § 40-35-115(b)(4), (6). Finding that the defendant was not capable of being rehabilitated, the trial court sentenced him to six years' incarceration on each of the three counts of aggravated assault and ordered that the terms be served consecutively, for an effective sentence of 18 years.

On appeal, the defendant argues that the trial court erred in its application of some – but not all – of the enhancement factors and that the court abused its discretion in ordering both a fully-incarcerative sentence and imposing consecutive sentencing. The State argues that the record fully supports the trial court's sentencing decision in this case. We will address each of these issues in turn.

## I. Enhancement Factors

Since the passage of the 1989 Sentencing Act, our standard of review when considering challenges to the length and manner of service of a sentence has been de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006) ("When reviewing sentencing issues raised pursuant to subsection (a), including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct."). In 2005, the general assembly amended the Sentencing Act to bring our sentencing law into compliance with federal constitutional requirements as enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004), and its progeny. Notably, the 2005 revisions rendered advisory the enhancement and mitigating factors and removed the presumptive sentence to be imposed by the trial court. *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008). In a number of cases following passage of the 2005 amendments, our supreme court signaled that the statutorily prescribed standard of review, de novo with a presumption of correctness, might be at odds with what had become a far more discretionary sentencing scheme. *See, e.g.*, *Carter*, 254 S.W.3d at 344, 346. In *State v. Cross*, 362 S.W.3d 512 (Tenn. 2012), the court again wrestled with the "the precise metes and bounds of appellate review under the current increased trial court discretion structure" but ultimately left the issue unsettled. *State v. Cross*, 362 S.W.3d 512, 529 (Tenn. 2012). The court visited the issue most recently in *State v. Bise*, and ultimately concluded that "although the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Observing that a change in our standard of review was necessary to comport with the holdings of the United States Supreme Court, our supreme court "adopt[ed] an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper

application of the purposes and principles of our Sentencing Act." *Id.* The court held that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness'" afforded to sentencing decisions of the trial court. *Id.* at 708.

The supreme court observed, however, that in making its sentencing decision, a trial court must consider the principles of sentencing enumerated in Code section 40-35-210(b):

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

*see Bise*, 380 S.W.3d at 698 n.33(citing T.C.A. § 40-35-210(b)), 706 n.41. By statute, the trial court must also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). The court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* at 706 n.41 (citing T.C.A. § 40-35-210(e)). Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not

invalidate the sentence imposed unless the trial court wholly departed from" the Sentencing Act. *Bise* at 706. Thus, under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

In the instant case, the record reflects that the trial court, in sentencing the defendant, considered all appropriate principles set forth in Code section 40-35-210(b). The trial court determined that the defendant was not amenable to rehabilitation, and the court orally placed on the record the enhancement and mitigating factors it considered when determining the defendant's sentence. In imposing the maximum sentence of six years for each count of aggravated assault, the trial court was not required to find the presence of any statutory enhancement factors. *See* T.C.A. § 40-35-210(c)-(e); *Bise*, 380 S.W.3d at 698. It did, however, find that seven enhancement factors were applicable, only five of which the defendant challenges on appeal. The defendant does not contend that the trial court misapplied factor six, addressing the victim's significant property damage, or factor thirteen, the fact that the crimes were committed while the defendant was on probation. *See* T.C.A. § 40-35-114(6), (13).

With respect to the challenged enhancement factors, we discern no error in the trial court's application of four of these factors. In finding enhancement factor one, previous history of criminal convictions or behavior, the trial court noted the defendant had two prior misdemeanor convictions. *See* T.C.A. § 40-35-114(1). The defendant was also convicted of criminal impersonation and unlawful possession of a firearm arising from his arrest in Bolivar. Although those crimes were committed after the underlying offenses in this case, trial courts "'can consider criminal convictions or any other criminal behavior which occurred prior to the sentencing hearing as being a previous history of criminal convictions or criminal behavior under [T.C.A.] § 40-35-114(1), regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration.'" *State v. Jordan*, 116 S.W.3d 8, 24 (Tenn. Crim. App. 2003) (quoting *State v. Ed Waters*, No. 01-C-01-9106-CR-00158, slip op. at 6-7 (Tenn. Crim. App., Nashville, Feb. 20, 1992)) (citation and internal quotation marks omitted). The defendant's prior criminal convictions are sufficient to establish enhancement factor one.

Next, the trial court found that factor two – that the defendant was a leader in the commission of the offense which involved two or more criminal actors – was applicable. *See* T.C.A. § 40-35-114(2). We agree. Without question, the defendant was "a leader" in the commission of these crimes. When he was arrested in Bolivar, the handgun found in his possession matched bullets found at the scene of the crime in Hickman County, and the defendant's girlfriend, Ms. Woodard, identified him as the shooter. That a second shooter may have participated does not preclude the use of factor two.

The trial court was further correct in finding factor ten, that the defendant did not hesitate to commit the crime when the risk to human life was high. *See* T.C.A. § 40-35-114(10). The trial court stated, "Clearly there was a risk to human life. You had four individuals there and, as [Mr. Roberts] testified, it's lucky for the victims that nobody – and for the defendant, as well – that nobody was killed." We find no error in the application of this enhancement factor.

The trial court also applied factor 16, that the defendant had been adjudicated to have committed delinquent acts as a juvenile that would have constituted felonies if committed by an adult. *See* T.C.A. § 40-35-114(16). The trial court relied on records from the Montgomery County Juvenile Court[1] in finding that the defendant had been adjudicated to have committed two such delinquent acts. Our review of the record supports the trial court's finding of one of these offenses, but there is no showing by a preponderance of the evidence that the other juvenile offense resulted in an adjudication. However, the existence of one adjudication is enough to warrant application of this factor.

We do hold, however, that the trial court erred in its application of factor three, that the offense involved more than one victim. *See* T.C.A. § 40-35-114(3). The defendant was convicted of three counts of aggravated assault, each count involving a specific, named victim. As our supreme court has noted, the language of factor three "limits its application to 'an *offense*' involving 'more than one (1) victim," and "there cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim." *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) (quoting T.C.A. § 40-35-114(3)). Although the application of this enhancement factor was erroneous, the error does not affect the propriety of the sentence. *See Bise*, 380 S.W.3d at 706.

We discern no abuse of discretion in the trial court's decision to impose the maximum allowable sentence in this case.

## II. Manner of Service of Sentence

Although the defendant does not specifically argue that the trial court erred in

---

[1] The defendant contends that these records were inadmissible hearsay and were not properly authenticated under Tennessee Rules of Evidence 901 and 902. The trial court, however, found the records to be reliable hearsay. There is no need to adduce evidence through a testifying witness when the evidence is judicially noticeable under Evidence rule 201. The trial court's review and commentary on the juvenile court records was an act of judicial notice. It is authorized by Rule 201(b)(2), the facts being "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* The trial court may take judicial notice "whether requested or not," Tenn. R. Evid. 201(c), and the notice may be taken at any stage of the proceeding. *Id.* at 201(f).

imposing a fully-incarcerative sentence, the defendant does contend that the court erred in its application of Code section 40-35-103, which addresses sentences involving confinement.

In *State v. Caudle*, 388 S.W.3d 273 (Tenn. 2012), the supreme court expanded the holding in *Bise* to the trial court's decision regarding alternative sentencing and probation eligibility, ruling "that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The record reflects that the trial court based its sentencing decision on the considerations set forth in Code section 40-35-103, which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;
>
> (2) The sentence imposed should be no greater than that deserved for the offense committed;
>
> . . . .
>
> (4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;
>
> (5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. . . .

*Id.*

Our review of the record indicates that the trial court placed great emphasis on Code subsection (1)(B), finding that confinement was necessary to avoid depreciating the seriousness of the offense or to effectively deter others from committing similar crimes. The court recognized "that the least severe measure is what is required" under subsection (4), but the court found "that [the defendant] knew that there were people in that house and [he] shot into that house . . . with the intent of killing somebody." Regarding Code subsection (5), the trial court further found that the defendant was not amenable to rehabilitation.

The trial court did "put some weight" on Code subsection (1)(C), that measures less restrictive than confinement have been recently applied unsuccessfully to the defendant. It appears that in applying this factor, the trial court partially relied on what it found to be two prior juvenile adjudications. We previously pointed out that the record failed to establish that the defendant had been adjudicated on one of those juvenile offenses, and as such, the trial court's reliance on that offense was improper. However, this was not the court's sole – or even primary – basis for imposing the fully-incarcerative sentence. Moreover, the defendant was on probation at the time of the commission of these crimes, clearly evincing that measures less restrictive than confinement had recently been applied unsuccessfully to the defendant. We find no abuse of discretion in the trial court's decision to order the defendant to serve his sentence in confinement.

### III. Sentence Alignment

Finally, the defendant challenges the trial court's decision to impose consecutive sentences.

The Sixth Amendment considerations attendant to the trial court's imposition of sentence length are not implicated by the trial court's decision regarding alignment of sentences. *See Oregon v. Ice*, 555 U.S. 160, 172 (2009); *State v. Allen*, 259 S.W.3d 671, 688 (Tenn. 2008) (ruling Sixth Amendment *Blakely* challenges inapplicable to consecutive sentencing). Consequently, our standard of review when considering challenges to the alignment of sentences remains de novo with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006); *see also id.* § 40-35-401(a) ("The defendant in a criminal case may appeal from the length, range or manner of service of the sentence imposed by the sentencing court. The defendant may also appeal the imposition of consecutive sentences."). The presumption of correctness afforded the trial court is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In the event the record fails to demonstrate the required

consideration by the trial court, review of the sentence is purely de novo. *Id.*

When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentence to be served consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115. They are:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). The existence of a single category is sufficient to warrant the

imposition of consecutive sentences. *See State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: the court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *Id.* at 937-39; *see State v. Imfeld*, 70 S.W.3d 698, 707-08 (Tenn. 2002).

In the instant case, the trial court based its decision to order consecutive sentencing on both the dangerous offender category and the fact that the defendant committed the underlying offenses while on probation. *See* T.C.A. 40-35-115(b)(4), (6). The defendant contends that the trial court, in relying on the dangerous offender category, did not make the additional findings required by *Wilkerson*. We need not concern ourselves with this contention, however, because the finding of a single category suffices to impose consecutive sentences. *Adams*, 973 S.W.2d at 231. As previously noted, the defendant was on probation at the time he committed these crimes. Therefore, we find no error in the trial court's decision to impose consecutive sentencing.

*Conclusion*

The trial court did not abuse its discretion in imposing a fully-incarcerative sentence. Furthermore, we find the trial court's imposition of consecutive sentences was appropriate. Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE