IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 10, 2021

## ROBERT JASON BURDICK v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County
No. CR037912, CR087508, II-CR053486      Joseph A. Woodruff, Judge**

_____

### No. M2020-00141-CCA-R3-PC
_____

In this consolidated appeal, the Petitioner, Robert Jason Burdick, appeals the denial of his two post-conviction petitions and dismissal of his petition for writ of error coram nobis. With regard to his post-conviction petitions, the Petitioner argues that he received ineffective assistance of counsel due to counsel's failure to challenge the trial court's enhancement of his sentence and failure to file a motion to suppress the State's warrantless attachment of a GPS tracking device to his vehicle. With regard to the petition for writ of error coram nobis, the Petitioner argues that the coram nobis court erred in summarily dismissing his petition and that he is entitled to due process tolling of the statute of limitations. After review, we affirm the judgments of the lower court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Robert Jason Burdick, Hartsville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Kim R. Helper, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

This case arises out of a series of rapes that occurred in Williamson County on different dates and involving different victims for which the Petitioner was indicted in case number II-CR053486.[1]  The cases were severed for trial.

In one of the cases,[2] counts nine and ten of the original indictment, the Petitioner was convicted of the aggravated rape and especially aggravated kidnapping of a minor victim that was committed in the early morning hours of November 2, 1999, and he was sentenced to twenty-five years in the Department of Correction.  This court affirmed the judgments of the trial court on direct appeal.  State v. Robert Jason Burdick, No. M2011-01299-CCA-R3-CD, 2012 WL 2151489 (Tenn. Crim. App. June 13, 2012), perm. app. denied (Tenn. Sept. 18, 2012).

In another of the cases,[3] counts twelve through fourteen of the original indictment, the Petitioner was convicted of rape, aggravated kidnapping, and aggravated burglary for offenses committed against an adult victim during the night of November 3, 2004, and he was sentenced to thirty years in the Department of Correction.  This court affirmed the judgments of the trial court on direct appeal.  State v. Robert Jason Burdick, No. M2012-01071-CCA-R3-CD, 2013 WL 2642313 (Tenn. Crim. App. June 11, 2013), perm. app. denied (Tenn. Nov. 13, 2013).

The Petitioner filed petitions for post-conviction relief in both cases and, after the appointment of counsel, several amended petitions were filed.  The Petitioner essentially raised the same allegations of ineffective assistance of counsel in both petitions.  Relevant to this appeal, he asserted that counsel was ineffective: (1) for failing to challenge the trial court's improper application of enhancement factors during sentencing, and (2) for failing to challenge law enforcement's placement of a GPS tracking device on his vehicle.

The petitions in both cases were heard together on November 26, 2019.  At the hearing, the Petitioner testified that he felt that he was being unfairly punished because his charges had been severed, and "the [c]ourt considered consecutive charges."  He acknowledged that he did not raise the issue to his lawyers before he was sentenced.

On cross-examination, the Petitioner admitted that an issue about consecutive sentencing was raised on appeal, and this court remanded the case to the trial court to make findings regarding the issue.  The Petitioner claimed that he did not see how the enhancement factor regarding prior criminal convictions or criminal behavior applied

---

[1] The Petitioner, coined the "Wooded Rapist," was also indicted for a series of rapes that occurred in Davidson County.

[2] This case is later designated case number CR087508 at the post-conviction relief stage.

[3] This case is later designated case number CR037912 at the post-conviction relief stage.

"since it was all under one indictment[.]"  However, he acknowledged that he had cases pending in Davidson County when he was sentenced on the Williamson County offenses, but he continued to allege, "[a]ll I was saying it was all under that same indictment."

The Petitioner said that during the course of his proceedings, he learned that a GPS monitoring device was attached to his vehicle, but neither trial nor appellate counsel ever raised an issue about the suppression of any evidence obtained therefrom.  He thought his two trials concluded before the United States Supreme Court issued its opinion in United States v. Jones, 565 U.S. 400 (2012), holding that law enforcement could not place a GPS monitoring device on a vehicle without a warrant, but that his appeals were in the appellate pipeline when Jones was decided, and his attorney should have raised a Fourth Amendment claim.

On cross-examination, the Petitioner stated that counsel briefly discussed the GPS issue with him but said that the issue "hasn't been decided; it's legal, they can do this[.]"  However, the Petitioner admitted that no evidence was used at trial based on the GPS device and that he was already in jail when the buccal swabs were taken from him.  He simply extrapolated that the buccal swabs were fruit of the poisonous tree because the GPS device was placed on his vehicle before he was arrested.

Captain David O'Neil of the Brentwood Police Department testified that he initially became involved in the investigations involving the Petitioner in 1999 when he responded to one of the rape calls as a patrol officer.  He recalled that that case was ultimately retired or dismissed at the request of the victim.

Turning to the issue about the GPS device, Captain O'Neil stated that he and his partner were part of the surveillance team "that was following [the Petitioner] around."  He remembered that the Petitioner was developed as a suspect on April 27, 2008.  The next day, Captain O'Neil and his partner watched the Petitioner at his place of employment and then followed him with visual surveillance to TG's Restaurant in Lavergne.  After the Petitioner left the restaurant, Captain O'Neil and his partner gathered the utensils used by the Petitioner with the consent of the restaurant owner.  They submitted the items to the Tennessee Bureau of Investigation ("TBI"), which confirmed that the DNA on those items matched the DNA collected of the unknown suspect in multiple rapes in Williamson and Davidson Counties.  The Nashville Police Department used that information as probable cause to obtain the swabs from the Petitioner after his arrest on May 1, 2008.

Captain O'Neil testified that they placed a GPS tracker on the Petitioner's vehicle on Tuesday, April 29, 2008, the day after the utensils were collected from the restaurant. He said that Jones had not yet been decided, and they were acting in good faith on an older decision that said a tracking device could be placed on a vehicle without a warrant.  Captain

O'Neil stated that they did not gain any information from the tracking device and were really just using it to protect the public until they could arrest the Petitioner, who was already a suspect. He said that they continued with visual surveillance during that period as well, and the purpose of the GPS was to maintain the Petitioner's location if visual surveillance was lost on him. Captain O'Neil recalled that the Petitioner had become a suspect based on the observations and efforts of Officer Hamm with the Brentwood Police Department. In light of information gathered by Officer Hamm, the Brentwood and Metro Nashville Police Departments began visually surveilling the Petitioner, which led to the collection of the utensils at the restaurant. Captain O'Neil recalled that a John Doe warrant with the suspect's DNA profile was issued in Davidson County prior to the aforementioned surveillance.

Captain O'Neil reiterated that there was no evidence gathered from use of the GPS device and that the Petitioner was identified as a suspect prior to the GPS being attached to his vehicle.

One of the attorneys who represented the Petitioner testified that she worked as an assistant public defender during the 2010 to 2012 timeframe. She recalled that she was appointed to represent the Petitioner, but his family ended up hiring private counsel who handled the first trial. She was re-appointed to represent the Petitioner in his second trial. She handled the Petitioner's trial but moved to different employment prior to his sentencing.

Trial counsel said that she was familiar with the enhancement factors that could be used in sentencing, one of which was a defendant's prior convictions or "[p]rior criminal conduct that would have been conduct that would have occurred prior to the acts that the defendant was being sentenced [on]." At the time counsel represented the Petitioner, she was aware that he had criminal cases pending in Davidson County relating to offenses that occurred prior to the offenses that resulted in convictions in Williamson County. The Petitioner's sentencing report reflected that prior criminal activity.

Trial counsel testified that she and the Petitioner discussed the issue about the GPS device being placed on his vehicle. She recalled that Jones was "in the pipeline . . . [and] obviously . . . on [her] radar." She spoke with Captain O'Neil and another detective, as well as reviewed the discovery, before advising the Petitioner that she would not file an additional motion to suppress based on Jones. She explained that it was her opinion that there was no legal basis to proceed with such motion because the DNA evidence had been obtained prior to the GPS device being attached to his car and no evidence had been obtained as a result of the GPS device. Trial counsel noted that she had already filed and litigated a motion to suppress regarding the search warrant and warrantless arrest, but after

- 4 -

her investigation she did not believe there was a basis to proceed with a motion to suppress based upon the GPS tracker.

On cross-examination, trial counsel acknowledged that there was not a strategic reason for not filing a motion to suppress pursuant to Jones "[o]ther than there wasn't any evidence to suppress." She reiterated on redirect that she had an ethical duty to not raise issues unsupported by evidence, "hence [she] did not file it."

At the conclusion of the hearing, the post-conviction court made extensive oral findings and then issued a written order dismissing the petition in case number CR037912 (original counts twelve through fourteen) on December 11, 2019, and in case number CR087508 (original counts nine and ten) on February 20, 2020. The Petitioner's notices of appeal were not timely filed, but this court waived the timely filing in the interests of justice. This court consolidated the two appeals under the above listed docket number, No. M2020-00141-CCA-R3-PC.

Meanwhile, on July 31, 2018, the Petitioner filed petitions for writ of error coram nobis in both cases, CR037912 and CR087508, which the trial court evidently consolidated. The trial court denied a motion by the State to dismiss as untimely. However, the Petitioner then moved to voluntarily dismiss his petition and, on November 26, 2019, the trial court granted the Petitioner's motion.

Thereafter, on December 11, 2019, the Petitioner filed a new petition for writ of error coram nobis in case number II-CR053486, the original underlying case number. In the petition, the Petitioner asserted that a private investigator had provided an affidavit that constituted newly discovered evidence because it invalidated the request for a search warrant that resulted in the seizure of DNA evidence that linked him to the 1999 and 2004 crimes of which he was convicted. The coram nobis court thoroughly analyzed the allegations and dismissed the petition as untimely on April 23, 2020. The court found that the investigator's affidavit did not constitute newly discovered evidence that could lead to a different outcome sufficient to provide a basis for due process tolling of the statute of limitations. The Petitioner's appeal from this dismissal was ultimately consolidated with the above referenced consolidated post-conviction appeal.

## ANALYSIS

### I.  Petitions for Post-Conviction Relief

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The

petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## A. Ineffective Assistance of Counsel

The Petitioner argues that counsel was ineffective for failing to challenge the trial court's enhancement of his sentence based on prior criminal conduct and failing to file a motion to suppress the State's attachment of a GPS tracking device to his vehicle without a warrant.

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)

(citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

### 1. Prior Convictions

The Petitioner asserts that counsel rendered ineffective assistance for failing to challenge the trial court's enhancement of his sentence based on "prior convictions" that "were nothing more than the first convictions handed down in a series of jury trials stemming from a 13-count indictment in Davidson and Williamson Counties." He notes that the trial court used his Davidson County convictions for attempted aggravated rape and especially aggravated kidnapping to enhance his sentence based on prior criminal conduct, and he acknowledges that he was convicted in this case after he was convicted for the Davidson County rapes. However, he asserts that because he had not committed new crimes or served time for the Davidson County convictions at the time of his arrest, he did not have a previous history of criminal convictions.

This court has previously held that "trial courts can consider criminal convictions or any other criminal behavior which occurred prior to the sentencing hearing as being 'a previous history of criminal convictions or criminal behavior' under Tenn. Code Ann. § 40-35-114(1), regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration." State v. Jordan, 116 S.W.3d 8, 24 (Tenn. Crim. App. 2003) (internal quotation omitted). At the evidentiary hearing, counsel testified that she was familiar with the enhancement factors that could be used in sentencing, one of which was a defendant's prior convictions or "[p]rior criminal conduct that would have been conduct that would have occurred prior to the acts that the defendant was being sentenced [on]." According to the Petitioner's presentence report, the criminal acts committed in Davidson County took place prior to the Petitioner's sentencing in the present

- 7 -

cases. We, therefore, conclude that counsel was not ineffective for failing to challenge the application of this enhancement factor.

In his reply brief, the Petitioner additionally asserts that because the Davidson County convictions had not become final and that appeal was pending at the time he was sentenced on the Williamson County convictions, those convictions could not be used to enhance his sentence. The Petitioner cites cases from Texas and Louisiana as persuasive authority for this supposition. This angle still does not entitle to the Petitioner to relief. The trial court could have enhanced the Petitioner's sentence based on prior criminal convictions or criminal *behavior*, see Tenn. Code Ann. § 40-35-114(1), and the Petitioner's activities in Davidson County could certainly qualify as criminal behavior. Thus, there was no prejudice caused by counsel's not challenging the trial court's enhancement of his sentence based on "prior convictions."

### 2. GPS Tracking Device

The Petitioner argues that both trial and appellate counsels rendered ineffective assistance for failing to challenge law enforcement's placement of a GPS tracking device on his vehicle without a warrant, "which ultimately led to his arrest and the taking of his DNA sample resulting in his conviction."

In support of his argument, the Petitioner points out that while his case was in the appellate pipeline, the United States Supreme Court issued its opinion in Jones, 565 U.S. 400, holding that the attachment of a GPS tracking device to a defendant's vehicle constituted a search within the meaning of the Fourth Amendment thus necessitating a warrant. He claims that counsel should have challenged his arrest "based upon an unreasonable seizure of his person stemming from an illegal search" and sought to suppress "all evidence obtained from [his] person, his vehicle and his home as fruits of an unconstitutional search and seizure." He also contends that "once law enforcement lost sight [of him] visually, . . . law enforcement relied upon the GPS device to locate [him] . . . and did initiate a 'stop' of the vehicle and effect an 'arrest' of his person without a warrant."

At the post-conviction hearing, counsel testified that she and the Petitioner discussed the issue about the GPS device being placed on his vehicle. She knew that Jones was in the appellate pipeline and was aware of its ramifications. She spoke with Captain O'Neil and another detective, as well as reviewed the discovery, before advising the Petitioner that she would not file an additional motion to suppress based on Jones. She explained that it was her opinion that there was no legal basis to proceed with such motion because the DNA evidence had been obtained prior to the GPS device being attached to his car, and no evidence had been obtained as a result of the GPS device. Counsel noted

that she had already filed and litigated a motion to suppress regarding the search warrant and warrantless arrest, but after her investigation she did not believe there was a basis to proceed with a motion to suppress based upon the GPS tracker, and she had an ethical duty not to file a frivolous motion.

In ruling on this issue, the post-conviction court found that there was not an ethical basis for counsel to file a motion to suppress based on the GPS tracking device "because there was in fact no legal or factual connection between the GPS tracking and the DNA evidence. . . . Consequently, . . . the Petitioner has failed to show that [counsel's] performance fell below the standard required for criminal defense attorneys."

The Petitioner's argument disregards the fact that no information or evidence was gathered as a result of the tracking device. The police had already obtained the Petitioner's DNA from utensils that he had used at a restaurant before the device was installed on his vehicle, and the DNA on those items matched the DNA collected of the unknown suspect in multiple rapes in Williamson and Davidson Counties. Evidence of the Petitioner's DNA was not fruit of the poisonous tree as the police had already obtained the sample before attaching the device to his vehicle. We determine that neither trial nor appellate counsel rendered deficient performance by failing to raise what would have been a frivolous claim. In addition, the Petitioner has not established prejudice because none of the evidence used to secure his arrest and convictions arose from the tracking device.

## II. Writ of Error Coram Nobis

The Petitioner also argues that the coram nobis court erred in summarily dismissing his petition for writ of error coram nobis and that he is entitled to due process tolling of the statute of limitations. The newly discovered evidence the Petitioner asserts entitles him to relief is an affidavit from a private investigator establishing that a detective falsely claimed that one of the rape victims had described her attacker to a TBI sketch artist, who created a sketch that resembled the Petitioner's driver's license photo and was used to obtain the search warrant that ultimately led to his wrongful conviction.

In ruling on the petition for writ of error coram nobis, the coram nobis court found that the affidavit of the private investigator did not entitle the Petitioner to relief. The court determined that the alleged statements of the victim recited in the investigator's affidavit were hearsay and that there was no exception allowing the investigator to testify about what the victim said to him. The court also determined that even if the hearsay statements were admissible, striking all references to the alleged sketch from the affidavit would not have invalidated the warrant, as the remaining facts provided abundant probable cause supporting its issuance. The court concluded that the affidavit did not provide newly

discovered evidence that could lead to a different outcome and thus did not provide a basis for due process tolling of the statute of limitations.

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c).

Our supreme court has stated the standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." State v. Vasques, 221 S.W.3d 514, 525-28 (Tenn. 2007) (citation omitted). Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner establishes that he or she was "without fault" in failing to present the evidence at the proper time. Harris v. State, 102 S.W.3d 587, 592 (Tenn. 2003). Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. Id. at 592-93. The decision to grant or deny coram nobis relief rests within the sound discretion of the coram nobis court. Vasques, 221 S.W.3d at 527-28. We review this issue, therefore, under an abuse of discretion standard.

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103; Harris v. State, 301 S.W.3d 141, 144 (Tenn. 2010), overruled on other grounds by Nunley v. State, 552 S.W.3d 800 (Tenn. 2018). The one-year statute of limitations may, however, be tolled on due process grounds if the petitioner seeks relief based upon newly discovered evidence of actual innocence. Nunley, 552 S.W.3d at 828-29 (citing State v. Wilson, 367 S.W.3d 229, 234 (Tenn. 2012)), overruled on other grounds by Nunley, 552 S.W.3d 800. In determining whether tolling is proper, the court must balance the petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. Harris, 301 S.W.3d at 145 (citing Workman v. State,

41 S.W.3d 100, 102 (Tenn. 2001)). Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992). The Burford rule consists of three steps:

(1) determine when the limitations period would normally have begun to run;

(2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and

(3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995), overruled on other grounds by Nunley, 552 S.W.3d 800. Whether a claim is time-barred is a question of law, which we review de novo. Harris, 301 S.W.3d at 145 (citation omitted).

The Petitioner does not dispute that his petition was untimely but asserts that he is entitled to due process tolling of the statute of limitations. We conclude that the coram nobis court properly dismissed the petition for a number of reasons. First, the Petitioner's claim is not later-arising in that there is no evidence that the victim was unavailable and unable to testify about the sketch during the limitations period. The victim was readily discovered by the investigator fourteen years after the incident at her current residence, and the investigator ascertained her place of employment. There is no proof that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." Vasques, 221 S.W.3d at 527. Moreover, discovery of or ignorance to the existence of a claim does not create a "later-arising" claim for due process purposes. See Brown v. State, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); Passarella v. State, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

Second, the investigator's affidavit was hearsay not subject to any exception. The investigator had no personal knowledge of the incident and was merely reciting statements from a victim related to an incident that occurred fourteen years earlier that supposedly disputed the officer's statement in the affidavit for a search warrant. There was no sworn statement or affidavit from the victim to verify the information contained in the investigator's affidavit, and this court has held "[a]n affidavit, like the testimony of a witness, must be relevant, material and germane to the grounds raised in the petition; and the affiant must have personal knowledge of the statements contained in the affidavit[.]" State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

- 11 -

Third, the Petitioner does not proffer any reason why the victim should be deemed unavailable, necessitating introduction of the investigator's affidavit. As noted above, the victim was readily located by the investigator at her residence, and her current employment was ascertained. The Petitioner has not established that the victim was unavailable.

Fourth, the Petitioner's suggestion that the affidavit was not hearsay because it was not offered to prove the truth of the matter asserted is without merit. The officer could have only lied in the search warrant if the victim did not speak with the sketch artist; obviously the Petitioner sought to introduce the victim's alleged statement to prove the truth of the matter asserted.

Fifth, the "newly discovered evidence," i.e., the investigator's affidavit, was not material. As determined by the coram nobis court, even if all references to the sketch were struck from the affidavit by the officer in support of the warrant, there was still sufficient probable cause to support issuance of the warrant. The court noted that the affidavit detailed that the Forrest Hills area had no noticeable foot traffic during the timeframes that coincided with the Wooded Rapist attacks, that a male whose description and clothing were exactly like that of the Wooded Rapist was seen on foot during the hours and in the location in line with the previous attacks, and that the Petitioner was stopped shortly thereafter and lied about his reasons for being in the area and conducted himself in a deceptive and evasive manner. The court further noted that the affidavit contained four pages of single-spaced typed information establishing circumstantial connections with the Petitioner and offenses associated with the Wooded Rapist, and that information about the disputed sketch was only one paragraph consisting of less than six lines of type. The court also noted that law enforcement encountered the Petitioner in the vicinity of one of the crimes, dressed in a manner consistent with a description by witnesses making a prowler report.

We easily conclude that the coram nobis court did not abuse its discretion in determining that the investigator's affidavit did not constitute newly discovered evidence that could lead to a different outcome sufficient to provide a basis for due process tolling of the statute of limitations.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the lower court.

_____
ALAN E. GLENN, JUDGE